306 So.2d 785 (1975)
H. B. `"BUSTER" HUGHES, INC., in its own right and as Assignee of Plaquemines Parish Commission Council.
v.
Sherman A. BERNARD et al.
No. 6572.
Court of Appeal of Louisiana, Fourth Circuit.
January 14, 1975.
Rehearing Denied February 13, 1975.
Writ Granted April 11, 1975.
*787 Wheeler & Wheeler, Thomas B. Wheeler and James L. Wheeler, New Orleans, for H. B. "Buster" Hughes, Inc., plaintiff-appellee.
Keiler & Buckley, Sam O. Buckley, New Orleans, for Sherman A. Bernard and Sherman A. Bernard House Moving and Shoring Corp., defendants-appellants.
Deutsch, Kerrigan & Stiles, Cornelius G. Van Dalen and Robert Wiegand, II, New Orleans, for Thomas Jordan, Inc., defendant-appellant.
Before LEMMON, STOULIG and MORIAL, JJ.
STOULIG, Judge.
This litigation involves claims for unpaid rental for the sublease of a manned crane barge and for damages resulting from its negligent operation while the Sherman A. Bernard House Moving and Shoring Corporation (hereinafter called the Bernard corporation) was fulfilling its contract with the Plaquemines Parish Commission Council to move several camps from a proposed hurricane levee construction site to other locations. It is alleged the crane, owned by Thomas Jordan, Inc. (Jordan), and subleased to Bernard by H. B. "Buster" Hughes (Hughes), was improperly utilized to excavate a flotation canal across a marsh and through the base of the proposed levee site. Due to the proposed issuance of a work order for construction under the levee contract, the repair of the damage to its base had to be undertaken immediately. Hughes was persuaded by Chalin Perez, president of the Plaquemines Parish Commission Council, to pay for the filling of the excavation with shell without awaiting the determination of the issue of liability. When the remedial work was completed, Perez, authorized to act by a resolution of the Parish Council, assigned to Hughes any claims the Parish might have arising from this incident.
Hughes then filed suit against Sherman Bernard individually and the Bernard corporation for $6,850 unpaid rental of the crane barge and, as "assignee and subrogee" of the Parish Council, for $25,490.97, the cost it expended on remedial work on the levee base. Alternatively, Hughes named Jordan as a defendant and sought recovery for the cost of repairs on the theory the vessel (barge) was unseaworthy because Jordan had furnished an incompetent *788 crew, in the event it was found the excavation was not directed by Bernard. Through reconventional demands and third party pleadings, the liability, sole or shared, of all the litigants is put at issue.
On the damage claim, Bernard basically takes the position the crew excavated the canal without his knowledge and, alternatively, the assignment by which plaintiff derives this right of action from the Plaquemines Parish Commission Council, is invalid. On the rent issue Bernard admits it is due but he disputes the amount.
Jordan advances the same argument as to the assignment, and alternatively pleads the crew of the barge crane were borrowed servants of Bernard, although employees of Jordan, thus exculpating the lessor from liability.
Judgment was rendered in favor of the plaintiff for $6,850 for past-due rental against Sherman Bernard individually and the Bernard corporation; and for $25,490.97 on the assigned claim against all of the defendants. From this adverse judgment all of the defendants have appealed.
The evidence developed at the trial is insufficient to furnish a factual basis upon which we might adjudicate all aspects of this suit. The record does establish the Bernard corporation was awarded a contract by Plaquemines Parish to relocate eight camps from a marshland right-of-way on which the United States Corps of Engineers planned to construct a hurricane protection levee to new sites designated by the Parish. On July 14, 1968, Sherman Bernard contacted Bobby Dagley, Hughes' representative, for the purpose of renting a crane barge to perform this contract. Not having this equipment available, plaintiff through Dagley arranged to lease the barge from Jordan which he sublet to Bernard. The record is silent as to whether Dagley negotiated the verbal contract of sublease with Bernard individually or as a representative of the Bernard corporation. In any event, Dagley testified he quoted Bernard a rental of $42.50 per hour for the manned crane barge with a ten-hour-per-day minimum charge. He further stated that under its lease with Jordan plaintiff was obligated to pay $32.50 per hour with the same daily minimum requirement.
Pursuant to this agreement, plaintiff dispatched a tug to tow the crane barge from the Jordan dock and deliver it to Sherman Bernard in Empire. Bernard advised that it was unnecessary for the tug to remain as he had his own boat with which to move the barge.
Performance of the camp-moving contract proceeded uneventfully for several days. On Friday, July 19, or Saturday, July 20, the barge crew began digging a flotation canal across the marsh to reach two camp sites on Bay Adams rather than proceeding there by a longer indirect route through navigable waters. That Sunday afternoon the barge operator was ordered to stop the excavation by the Corps of Engineers and/or Chalin Perez, and the vessel was seized. At this point the crane had dredged through between two-thirds and three-fourths of the levee right-of-way and, in so doing, had destroyed the marsh foundation upon which the levee was to be constructed.
The operation remained suspended for one or two days, after which either Perez or the Corps of Engineers instructed the operator or Bernard to resume dredging the channel to Bay Adams because (1) the camp-moving contract was behind schedule and (2) the damage to the foundation had been done.
Meanwhile, according to the testimony of Perez, it was essential to repair the levee foundation without delay because the 1968 hurricane season was approaching and the Corps of Engineers would not issue the work order for the construction of the levee until the excavation was filled. In a letter to Perez dated August 9, 1968 (introduced *789 in evidence by plaintiff without objection)[1] the Corps advised:
"This excavation constitutes an adverse change with respect to the levee foundation and, therefore, must be rectified before notice to proceed can be issued to the contractor. An engineering analysis has been made to determine the acceptable method of repair. It was found that the segment of this channel within 161 feet of each side of the centerline of the proposed levee must be filled with shell in horizontal lifts across the full width, * * *. Replacement of the material that was excavated by casting back into the channel will not be acceptable, nor can replacement be made through the closure by hydraulic means."
Perez testified after being unable to contact Bernard he requested the Hughes corporation to assume the responsibility and undertake the remedial work. Hughes contracted with Ayres Material Co., Inc., to furnish the shells and fill the excavation for which it was charged $25,490.97. The record is insufficient to admit of a calculation of how much of the excavation this amount of shells covered; however, it is highly probable that it exceeded the 322-foot area specified by the Corps of Engineers.
We will discuss the areas in which the evidence is incomplete and inconclusive as we consider the various complaints of error raised by the Bernard corporation and Bernard individually.
Before considering the merits of the Bernard appeal we will consider a procedural issue raised by all defendants and Jordan's contention it should be dismissed from this suit.
There were two trials held in this matter. On May 1, 1972 at the close of the first trial, defendants urged an exception of no right of action, which the court took under advisement. Counsel were instructed to submit memoranda in support of their respective positions. Somehow the memoranda were erroneously captioned and filed in the wrong proceeding. The trial judge dismissed the suit inadvertently, holding the issues were moot. (This result should have obtained in another case pending before the Plaquemines Parish court between Bernard and Jordan.) The judgment dismissing the suit, signed on September 5, 1973, was mailed by the clerk of court to counsel for all litigants on September 6, 1973. On September 11, 1973, the court, discovering the mistake, signed an order granting a new trial.[2]
Defendants argue the order for a new trial, issued ex proprio motu, came too late because the three-day period for applying for a new trial (C.C.P. art. 1974) had expired. They submit a trial judge, even when granting a new trial on his motion, must act within the period specified by the Code of Civil Procedure.[3]
We agree with this statement of law but find it inapposite to the facts before us. Because this matter was taken under advisement, the clerk of court was charged with the responsibility of mailing notice of judgment to all counsel, which was done on September 6. C.C.P. art. 1974 *790 provides in this instance the delay period begins to run the day after notice is mailed or on September 7. A weekend intervened between September 7 and 11, thus the order was signed on the third legal day and was timely.
Defendant Bernard argues the delay in which the trial judge may grant a new trial on his own motion differs from the delay within which the attorneys could apply in the instance where the matter has been taken under advisement; or where a default judgment is based on domiciliary service. C.C.P. arts. 1913 and 1974. This argument is based on the hypothesis that the trial judge, having signed the judgment, is not required to be notified of the act as are counsel in this case. Thus the three days within which he may grant a new trial on his own motion begins the day after the signing of judgment, not the date after notice is mailed.
We find no merit in this position. Our procedural law on notice of judgments and applications for new trials is designated to afford procedural due process to the litigants. The court simply administers these rules. While it is possible that two defendants cast in judgment might have different time limits within which to apply for a new trial, there is no separate time limit applicable to the trial judge. As long as the court retains jurisdiction over a litigant whose delay for applying for a new trial has not expired, the court on its own motion may grant a new trial in that party's favor. By so doing, the court does not extend the delay in which the particular litigant may apply for a new trial.
Jordan advances a second argument as to why all claims against it should be dismissed, namely, that it has no liability for the acts of the crew of the barge, because, at the time of excavation, the oiler and operator were employees pro hac vice of Bernard. We agree.
We note there is a dispute as to whether the oiler and operator dredged the canal at Bernard's direction or undertook the excavation without his instruction or knowledge. If for the purpose of resolving the borrowed servant contention we assume arguendo the crew members acted independently of any instruction or direction from Bernard, we would nonetheless conclude Bernard was liable for their negligent acts under the doctrine of respondeat superior. It was Bernard who had complete temporary control of the crew members who were rendering services to him in performing the camp-moving contract. While the work was underway Bernard's personnel were on the scene instructing the crane barge crew as to when and where various camps should be moved. Although Bernard said the crew illegally cut the canal on a Saturday and Sunday when none of his personnel were on the scene, he admitted instructing the crane barge operator to move the rig to a location in Bay Adams. Conversely, Jordan had no interest whatsoever in the Plaquemines project other than collecting daily rental from Hughes for the use of the crew and equipment.
In determining whether the oiler and operator in this case were borrowed servants, we apply the criterion of control and conclude without difficulty that Sherman Bernard had exclusive power to direct their work activity during the lease period.[4] Here the right to control is coupled with the fact it was the exclusive business of Sherman Bernard being performed and this leaves no doubt the crew members were Bernard's employees pro hac vice.[5] Thus, if the crew was negligent, the liability therefor attaches to Bernard under the doctrine of respondeat superior.[6]
*791 Bernard would have us hold Jordan liable for an alleged breach of a warranty of seaworthiness inherent in the contract of lease. Bernard reasons if the barge crew dug the canal without instruction it was incompetent[7] and this is sufficient to render the vessel unseaworthy. The cases[8] relied upon by Bernard discuss the warranty of seaworthiness the vessel owner impliedly owes an injured seaman or longshoreman under maritime law. Defendant Bernard has not cited nor are we aware of any jurisprudence that would warrant a finding this vessel was unseaworthy and Jordan, the owner, was therefore liable. This is particularly true when defendant Bernard alleged unseaworthiness but offered not one bit of evidence to prove this charge. We hold, as to Jordan, all claims in this suit are dismissed.
Turning to Bernard's contention quo ad plaintiff, we first consider the allegation plaintiff failed to prove the amount of rental due. C.C. art. 2277 provides that debts for more than $500 must be proved by the testimony of one credible witness and other corroborating circumstances. Dagley, representing plaintiff, testified the lease price was $42.50 per hour. Plaintiff's owner Buster Hughes testified his company usually billed this equipment at $50 per hour and this was inadvertently done in this case; however, he conceded Dagley had authority to negotiate a lower rental. Bernard asserted the hourly rate was to be $32.50. In written reasons the trial court stated it accepted Dagley's testimony as to hourly rate and understandably so. If Hughes paid Jordan $32.50 per hour and delivered the equipment with its own tug, they would incur expenses in handling the job and take a loss on this contract if Bernard's testimony is accurate. We conclude Dagley's testimony, considered with the surrounding circumstances in this case, is sufficient to prove the parties agreed to a rental of $42.50 per hour.
Bernard further claims he was charged for more time than he used the barge. On this point the evidence is confused. According to logs of the Jordan corporation kept by the crew of the Orleans, the vessel worked from July 15 through July 27 under the Bernard lease. From these records we compute the crew worked 147 hours, which multipled by the hourly rental of $42.50 results in a rental of $6,247.50 to which must be added the sum of $500, representing towing charges to and from the jobsite in Empire, Louisiana, for a total of $6,747.50. Plaintiff's itemized invoice reflects the vessel worked from July 16 through July 26 at an hourly rate of $50 plus towing charges of $500, for a total rental of $6,850 being the identical amount for which the trial court rendered judgment in favor of plaintiff. However, the record bears out that the agreed rental was $42.50 per hour and the itemized invoice must be adjusted accordingly to correspond with this hourly rental, resulting in a corrected total of $5,897.50.
Bernard claims he should not have been charged rental for the days the barge was seized or for one day when it was inoperative for repairs. Bernard is liable for rent on the days the vessel was impounded either because he ordered the illegal excavation which resulted in the seizure, or because the operator and oiler, his employees pro hac vice, were responsible for this action. However, there may be merit to the claim no rent is due for the day the boat was being repaired.
The time factor needs clarification. Plaintiff should establish with certainty the hours the barge worked. It failed to do so at either trial, and defendant Bernard should have the opportunity to adduce evidence *792 as to the amount of time the barge was being repaired during the lease period and be credited for any reduction resulting therefrom. Additionally the record is not explicit as to whether plaintiff subleased the crane barge to Bernard individually or to his corporation. If he simply identified himself as Sherman Bernard when he verbally rented the equipment, even though it was used to perform a contract of the Bernard corporation, he is individually liable.[9]
However, it is clear that the suit against Sherman Bernard individually on the reimbursement plaintiff claims is due as "assignee and subrogee" of the Plaquemines Parish Commission Council should be dismissed. Since the Parish contracted with the Bernard corporation, its claim for wrongful excavation is limited to one against the corporation.
The Bernard corporation seeks a dismissal of plaintiff's suit on exceptions of no right or cause of action. It is argued the assignment by Plaquemines Parish to plaintiff is a nullity because the payment received by the creditor (the Parish) from the assignee antedated the formal act of assignment, in violation of C.C. art. 2160, which states in part:
"The subrogation is conventional:
1. When the creditor, receiving his payment from a third person, subrogates him in his rights, actions, privileges, and mortgages against the debtor; this subrogation must be expressed and made at the same time as the payment." (Emphasis added.)
Further Bernard urges that this payment cannot be construed as a legal subrogation because Hughes was not obligated to pay the debt demanded by the Parish but voluntarily acted to accommodate the Parish. C.C. art. 2161 provides in part:
"Subrogation takes place of right:
1. For the benefit of him, who, being himself a creditor, pays another creditor, whose claim is preferable to his by reason of his privileges or mortgages."
This argument is predicated on the erroneous premise there is no difference between the legal effect of an assignment and a subrogation. In an assignmentin this case the sale of any and all rights of action the Parish may have for the excavationthe assignee succeeds completely to all rights the assignor might have. In a subrogation, the subrogee is limited in recovery to that amount he has paid for the benefit of another.[10] While an act of assignment may include a subrogation clause (the greater includes the lesser), a subrogation is not as broad as the sale of a right of action authorized by C.C. art. 2642. The assignment of a claim is not restricted by the provisions of C.C. arts. 2160 and 2161, rather it is regulated by the codal provisions of Book III Of The Different Modes of Acquiring the Ownership of Things, Title VII Of Sale, Chapter 12 Of the Assignment or Transfer of Credits and Other Incorporeal Rights (arts. 2642-2654). We hold there is no merit in the exceptions.
The other arguments advanced in support of the exceptions address themselves primarily to sufficiency of proof. As the record now stands, it does not reflect if the 9,685.11 cubic yards of shell furnished to plaintiff were used exclusively to fill the 322-foot segment of the excavation as required by the Corps of Engineers. Should part of this material have been used to backfill any portion of the flotation channel beyond the limits of the Corps of Engineers requirements, rather than backfill with the excavated soil, the defendant may well be entitled to an adjustment of plaintiff's claim for its assignor's failure to minimize the cost of repairs. Further it is relevant to establish at what point in the *793 excavation the Parish officials ordered the canal continued to facilitate the camp-moving contract for this too can adversely affect the amount of plaintiff's claim.
We agree the evidence is insufficient to support the judgment rendered for plaintiff on the assigned claim. We have the option of dismissing this suit or remanding the matter. In the interest of justice, we will remand because it is evidence plaintiff is entitled to recover some amount. In so doing we have considered plaintiff's voluntary undertaking of the repairs when they were urgently needed and when defendant Bernard could not be located to discuss his potential liability.
For the reasons assigned the judgment appealed from is reversed insofar as it cast Thomas Jordan, Inc., in judgment and it is now ordered that all claims against Jordan are dismissed; it is further ordered this matter should be remanded to the trial court for proceedings consistent with the views herein expressed. Assessment of costs will be made at the final outcome of this litigation.
Reversed in part and remanded.
NOTES
[1] On the first hearing of this matter (May 1, 1972) counsel for Bernard objected to the introduction of this letter which was admitted subject to his objection. At a later hearing held on April 15, 1974, Bernard's counsel in response to an inquiry of the court specifically stated he had no objection to this letter's introduction into evidence.
[2] In the written preamble to the order granting a new trial, the trial judge stated:

"* * * [I]t now appears that a memorandum was timely filed herein under an erroneous caption and number, by Sam O. Buckley, attorney for Sherman A. Bernard, et al., and was not therefore entered in the record of this case. As a result thereof, two opposing memoranda filed by Wheeler and Wheeler, attorneys for plaintiffs, also became misplaced. This Court, therefore, having been misled and incompletely informed as to the issues involved and finding that the issues herein are not moot, finds good grounds to order a new trial."
[3] Mitchell v. Louisiana Industrial Life Ins. Co., 204 La. 855, 16 So.2d 458 (1943), so holds.
[4] Truitt v. B & G Crane Service, Inc., 165 So.2d 874 (La.App. 4th Cir. 1964).
[5] Benoit v. Hunt Tool Co., 219 La. 380, 53 So.2d 137 (1951).
[6] B & G Crane Service v. Thomas W. Hooley & Sons, 227 La. 667, 80 So.2d 369 (1955).
[7] The act of the crew even if unauthorized is not one of incompetence in the technical operation of the barge, but rather a lack of communication between Bernard and the crew.
[8] Blow v. Compagnie Maritime Belge (Lloyd Royal) S.A., 395 F.2d 74 (4th Cir. 1968); Empire Seafoods, Inc. v. Anderson, 398 F.2d 204 (5th Cir. 1968).
[9] Transport Refrigeration of La., Inc. v. D'Antoni, 281 So.2d 469 (La.App.4th Cir. 1973); Olympic Electric Service, Inc. v. Craig, 286 So.2d 182 (La.App.4th Cir. 1973).
[10] See 25 T.L.R. 358, 368 Fundamental Principles and Effects of Subrogation in French and Louisiana Law by Stanley McDermott, Jr.