318 So.2d 9 (1975)
H. B. "BUSTER" HUGHES, INC., in its own right and as assignee of Plaquemines Parish Commission Council
v.
Sherman A. BERNARD et al.
No. 56001.
Supreme Court of Louisiana.
September 5, 1975.
Sidney W. Provensal, Jr., Provensal & Fitzmaurice, New Orleans, for plaintiff-applicant.
Sam O. Buckley, Keiler & Buckley, New Orleans, for defendants-respondents.
*10 CALOGERO, Justice.
Plaintiff, H. B. "Buster" Hughes, Inc., sued Sherman A. Bernard and the Sherman A. Bernard House Moving and Shoring Corporation for unpaid rental for the sublease of a manned crane barge and the same defendants, along with Thomas Jordan, Inc.,[1] for damages resulting from the negligent operation of the crane barge in fulfilling a contract of the Bernard corporation with the Plaquemines Parish Commission Council. The contract was for the relocation of eight camps from near a proposed hurricane levee construction site to other locations. The operator of the crane barge, in connection with its maneuvering, had mistakenly excavated a flotation canal across a portion of marshland which was to serve as a portion of the base of the proposed hurricane levee.
Following the excavation, and because time was of the essence, Hughes, sublessor of the crane barge, was persuaded by the President of the Plaquemines Parish Commission Council to arrange and to pay for filling the excavated area with shells without awaiting determination of fault, corresponding civil liability and/or negotiated repair by the responsible party or parties. After such remedial work was completed, the Plaquemines Parish Commission Council assigned to plaintiff any claims the parish might have arising from the incident. This accounts for Hughes, Inc. being the party asserting the damage claim for $25,490.97, the cost expended for repair of the levee base.
Numerous pleadings, including the petition and reconventional and third party demands, were filed in the trial court by the four litigants, H. B. "Buster" Hughes, Inc., Sherman A. Bernard, Sherman A. Bernard House Moving and Shoring Corporation, and Thomas Jordan, Inc. In view of the restrictive nature of the issues before us, we decline to discuss the substance of those pleadings and the disposition of the myriad claims in the trial court and the court of appeal except to the extent which follows. The court of appeal opinion amply discusses each of these other matters. See H. B. "Buster" Hughes, Inc. v. Bernard, 306 So.2d 785 (La.App.3rd Cir. 1975).
The sole legal issue which we will consider is whether the court of appeal erred in reversing the judgment of the district court insofar as that court had cast Sherman A. Bernard personally on the damage claim.[2] The trial court's basis for holding Bernard personally liable was a finding that Bernard had not with due care restricted, controlled and supervised the barge operator and had failed to communicate to the barge operator knowledge concerning the location of the proposed hurricane levee; [3] further, the trial court noted that Bernard in his answer to the petition *11 admitted that he did business on occasion under the trade name and style of Sherman A. Bernard House Moving and Shoring Corporation.
In reversing this portion of the judgment and instructing the trial court on remand to exonerate Bernard from personal liability, the court of appeal reasoned that because Plaquemines Parish had contracted with the Bernard corporation, its assigned claim for wrongful excavation was limited to one against the corporation. We were prompted to grant a writ of review on this point because of the belief that under appropriate circumstances Bernard might be personally liable to Plaquemines Parish notwithstanding that their contract was with the corporation. We have therefore reviewed the record to determine if the facts demonstrate that Bernard was personally at fault in connection with the negligent damaging of the marshland levee base.
It is undisputed that Bernard is the principal corporate officer of the Sherman A. Bernard House Moving and Shoring Corporation and also the exclusive or dominant stockholder in that corporation. Furthermore, it is clear that the contract for the relocation of the camps was a contract between the Plaquemines Parish Commission Council and the Sherman A. Bernard House Moving and Shoring Corporation. Accordingly, any fault on the part of the barge operator or oiler is chargeable to his employer, the Bernard corporation, and not to Bernard personally.
Dredging of the flotation canal across the levee base occurred on a weekend when neither Bernard nor his crew was present. Apparently the only individuals present were the barge's operator and oiler, and neither of these individuals testified at trial. Oxner, the barge operator, was in West Africa at the time of trial and was thus unavailable. His deposition had been taken at an earlier time by plaintiff's attorney, but as notice of the deposition proceedings had not been given defendant as required by Article 1451 of the Louisiana Code of Civil Procedure, the trial court refused to allow the deposition to be introduced at trial other than as a proffer. Plaintiff has not disputed this ruling.
With the exclusion of the Oxner deposition, the sole evidence at trial shedding any light on Bernard's possible personal negligence was the testimony of Bernard himself. Bernard testified that he was at the site when the crane barge and its personnel arrived and that while present he personally supervised removal of the camps. The camps were situated in or near Adams Bay, a body of water fronting on the marshland which in turn is in front of the old levee. The camps were to be moved to this out-moded levee by means of access canals, one running parallel to the levee and two others running perpendicular to the levee through the marsh. Three of the camps which were located on one of the perpendicular access canals had been successfully moved to the old levee prior to the negligent excavation of the marsh. The camps which were next to be removed were situated in the bay, directly across the marshland from the old levee.
Bernard admitted that he gave Oxner no maps, charts or diagrams of the area. He testified that the camps, access canals and marshland were clearly visible from the levee and that he accordingly just gave Oxner an "oral map." Bernard specifically testified that when he left the site on *12 Friday, he instructed Oxner to move the crane barge out through the access canals to the camps in the bay. He denied that he instructed Oxner to cut a canal through the marshland, an alternate procedure which would perhaps more conveniently have facilitated the required movement of the camps, but instead he testified simply that he expected Oxner to be in position in the bay ready to proceed with the actual moving of the camps the following Monday.[4]
The law is settled that if an officer or agent of a corporation through his fault injures another to whom he owes a personal duty, whether or not the act culminating in the injury is committed by or for the corporation, the officer or agent is liable personally to the injured third person, and it does not matter that liability might also attach to the corporation. Article 2315 Civil Code; Canter v. Koehring Company, La., 283 So.2d 716 (1973); 3 Fletcher Cyclopedia of the Law of Private Corporations, section 1135; 19 Am.Jur.2d, Corporations, section 1382.
Bernard was on the property of Plaquemines Parish because of his status as a corporate officer of the Sherman A. Bernard House Moving and Shoring Corporation. While on the property he owed personally to Plaquemines Parish the same duty which any person owes to another, that is, the duty not to cause damage to the property of the other. Under the circumstances of this case, however, we cannot and do not conclude that Bernard personally breached the duty which he owed to Plaquemines Parish. There is no evidence in the record to show that Bernard instructed Oxner to excavate the flotation canal. Nor can we conclude that Bernard was in any other respect personally at fault. His uncontroverted testimony is that he instructed Oxner to proceed only into the bay beside the camps. There is no evidence that Oxner was not a competent, trustworthy employee (a borrowed servant), and accordingly Bernard was under no duty to instruct Oxner as to various activities which Oxner should not undertake.
For the foregoing reasons we find applicant's assignment of errors without merit and recall our writ.
The decision of the Court of Appeal is affirmed and the case remanded to the district court for further proceedings consistent with the opinion of the Court of Appeal.
NOTES
[1] The barge in question was owned by Thomas Jordan, Inc. Hughes leased the barge from Jordan and in turn subleased the barge to Bernard or his corporation. The rented barge was furnished by Jordan with an operator and an oiler. While Bernard was subleasing the barge from Hughes, he had complete dominion and control over both the barge and the Jordan employees. Jordan has been exonerated from liability by the court of appeal.
[2] Only plaintiff Hughes sought review of the court of appeal opinion, and its exclusive assignments of error were:

"1. The Court of Appeal erred in reversing the judgment of the district court which awarded damages in the sum of $25,490.97 against Sherman A. Bernard personally.
"2. In the alternative the Court of Appeal erred in not remanding the proceedings to determine the personal negligence and liability of Sherman A. Bernard."
[3] The trial court's full reasons relative to its finding of personal liability on the part of Bernard are as follows:

BERNARD was equally and contributorily negligent in not having restricted, controlled and supervised the operator of the barge under his control in the method of his operation and the route to be followed by the crane barge in reaching and removing the camps as a direct result of which the operator dug a trench through the marsh straight for the camps, cutting through the levee site, the location of which was fully known to BERNARD but which he negligently failed to communicate to the barge operator so that such unlawful trespass and damage could be avoided.
BERNARD and the operator in charge of the barge were charged with the legal knowledge of knowing the exact location of the proposed hurricane protection levee which was common public knowledge. It is clear from the testimony that Bernard knew the location and the operator should have ascertained it before he destroyed the existing foundation of the proposed levee by cutting through it.
[4] The evidence shows that when Bernard left the site on Friday, the barge was in the access canal which ran parallel to and near the old levee. Counsel for Bernard makes the well-taken point that had Oxner's instructions been to dredge a flotation canal across the marshland, the logical manner in which to proceed would have been to begin dredging from this access canal out toward the bay. The undisputed fact, however, is that Oxner "tagged" the barge through the access canals out into Adams Bay. Then, for whatever reasons, he proceeded past the camps and began dredging a canal back from the bay to the levee.