BEER, Judge.
This case was previously heard by us and remanded. See: H. B. “Buster” Hughes, Inc. v. Bernard, 306 So.2d 785 (La.App. 4th Cir. 1975), writ revoked with reasons, 318 So.2d 9 (Supreme Court of La., 1975).
The facts giving rise to this litigation are set forth in detail in our previous opinion. In summary, this litigation now involves only (1) the resolution of a claim by Hughes against Bernard, et al, for rental due for the sublease of the barge “ORLEANS,” and (2) the resolution of a claim against Bernard’s corporation (assigned to Hughes) for the cost of repair necessitated by erroneous excavation of a channel.
In fulfillment of a contract between Bernard’s corporation and Plaquemines Parish for removal of nine “camps” located too close to a hurricane levee right-of-way, Bernard’s acknowledged borrowed servant erroneously excavated a flotation channel from the campsites on Bay Adams, across approximately two-thirds to three-fourths of the marshland between the Bay and the relocation sites. The channel was unintentionally yet improperly cut across an area which was to form the base of a hurricane levee right-of-way. Excavation was eventually halted by the Corps of Engineers, upon their • discovery of what was taking place, but was later allowed to resume because “the damage had already been done” and completion of the channel would expedite the already delayed removal of the camps.
Subsequently, the Corps of Engineers required that the levee base be repaired by filling the channel that had been improvidently cut. Because of the urgency of this repair, appellee Hughes was persuaded by Chalin 0. Perez, President of the Plaque-mines Parish Commission Council, to contract for the needed repairs, pay $25,490.97 therefor, and accept an assignment of all claims the Parish had against Bernard’s corporation for same.
In its own right, appellee Hughes also asserts claim due from Bernard or his corporation for rental of the barge “ORLEANS” in the amount of $6,850.00.
In our previous opinion, we noted:
“ . . .As the record now stands, it does not reflect if the'9,685.11 cubic yards of shell furnished to plaintiff were used exclusively to fill the 322-foot segment of the excavation as required by the Corps of Engineers. Should part of this material have been used to backfill any portion of the flotation channel beyond the limits of the Corps of Engineers requirements, rather than backfill with the excavated soil, the defendant may well be entitled to an adjustment of plaintiff’s claim for its assignor’s failure to minimize the cost of repairs. Further it is relevant to establish at what point in the excavation the Parish officials ordered the canal continued to facilitate the camp-moving contract for this too can adversely affect the amount of plaintiff’s claim.”
We also determined that the repair claim could only be asserted against Bernard’s corporation, not Bernard personally, because the assigned claim arose from a contract with the corporation. In revoking writs, the Supreme Court affirmed this determination.
With regard to the barge rental claim, we determined that the hourly rental rate was $42.50 but were unsure of the number of hours worked by the barge. Thus, on remand, the following issues were to be addressed:
1. if Bernard had, as an individual rather than a corporate officer, contract *1029 ed for the barge rental, and was therefore individually liable for the rental due;
2. if the barge had operated for time periods as reflected by Jordan’s (its owner) records, as reflected by plaintiff’s invoice to Bernard, or less, because of repairs, as alleged by Bernard;
3. whether all of the shells that were used to fill the channel were needed as a result of the original improper cutting of same; and
4. whether the cutting had caused the total damages claimed.
The trial court held that Bernard had failed to identify himself in his corporate capacity, was therefore personally liable for the barge rental and denied credit for repair time on the ground that the contract provided for a 10 hour per day minimum which entitled plaintiff to be paid for ten hours even if the barge was not working because of being in need of repair. The court also awarded approximately two-thirds of plaintiff’s claim against Bernard’s corporation for channel cut refilling, in the net amount of $16,992.28.
Bernard now contends the trial court erred in holding him personally responsible for the barge rental since the requirements of La.Civil Code art. 2277 were not met. He avers that no documentary proof or corroborating circumstances confirm the contention that he failed to identify himself in his corporate capacity, and also disputes the trial court’s denial of credit for repair time. Bernard’s corporation now contends that the record does not support the award against it in the amount of $16,992.28. Ap-pellee did not answer the appeal.
We find that the record supports a conclusion that all or almost all of the proposed levee base had been cut when the channel was improvidently dug (which is not contradictory to the essentially irrelevant evidence that two-thirds of the channel had been excavated). Bernard’s own testimony at the original trial indicates repeatedly that the Corps of Engineers allowed resumption of the channel excavation because the damage to the proposed levee base had already been done.
At the first trial on the merits, Bernard, himself, responding to an inquiry regarding the stoppage of the cutting of the channel by the Corps of Engineers, responded as follows: “They told him to go on because the damage had already been done.” (Emphasis ours.) This was reiterated by him when, in response to the question: “Do you know when the cut was finally finished?”, he responded: “Whenever they said go ahead and finish cutting because the damage had already been done. . . . ” Essentially the same acknowledgement is apparent throughout Bernard’s first trial testimony.
The same is true of Perez’ testimony, who, in responding to an inquiry regarding the removal of the barge, answered: “Because the damage had already (sic) done to the levee based area . '. .” and, further, “So, then, the last part then was just cut on the basis of the decision that this was just as good of a way of getting out of there as any other way and that most of the damage had been already done.”
On the question of whether the entire amount of shells was used in the affected area, no additional evidence was adduced on remand. At the first trial, Bobby Dagley, Hughes’ representative, testified that the Corps of Engineers supervised the job so that the filling of the cut would comply with their specifications. On the basis of this evidence, we are of the view that plaintiff made a prima facie showing of the use of the shells for the required repair. Bernard did not go forward with any evidence to the contrary.
We conclude that at least two-thirds of the levee base was excavated (more likely, all of it), and, accordingly, the judgment against the Sherman A. Bernard House Moving and Shoring Corporation in the amount of $16,992.28 is supported by the record and should be affirmed.
Dagley testified that he did not remember Bernard saying anything about a corporation when he called to lease the barge. *1030 He also stated that all of his notes refer to Bernard only as Sherman Bernard or S. A. Bernard. These notes were not introduced into evidence. Hughes’ invoice showed that Bernard was billed as “Bernard House Moving and Shoring.” On the basis of this sketchy evidence, the trial court concluded:
“Mr. Hughes testified that he did not know Bernard had a corporation and his dealings with Bernard were as a person and in fact, when he told Dagley that Bernard was O.K., he meant Bernard personally. This is corroborated by the bill being sent to Bernard House Moving and Shoring without any reference to a corporation. Hughes knew that Bernard was in the house moving business because he had worked for Hughes before.
Bernard testified that when he called Dagley, he identified himself as Sherman Bernard, President of Sherman A. Bernard House Moving and Shoring Corporation. This is extremely unlikely and contrary to the notations made by Dagley at the exact time that the phone call was made. Bernard is relying on his memory now about a telephone conversation that took place in July of 1968, over eight years ago.” (Reasons for Judgment.)
In order to meet the requirements of proof of La.Civil Code art. 2277, the testimony of a credible witness must be supported by corroborating circumstances. See, e. g., Bordlee v. Pat’s Construction Company, Inc., 316 So.2d 16 (La.App. 4th Cir. 1975). Although the credibility of Dag-ley’s testimony is governed by the manifest error doctrine, it is not supported by documentary proof or corroborating circumstances. Dagley’s notes are not in evidence and cannot be considered corroborative of his testimony. The mere omission of the word “corporation” from the bill to Bernard House Moving and Shoring is not a proper basis for finding that Hughes was billing Bernard on an individual basis. If relevant at all, this evidence tends, in our view, to indicate that Hughes was dealing with Bernard House Moving and Shoring, not with Bernard individually. In fact, there is no refutation of Bernard’s testimony that he has not engaged in the moving and shoring business individually since 1954 when the corporation was formed. We are of the view that there is insufficient proof of any contract between Hughes and Bernard individually and that the record supports only a finding of indebtedness on the part of Bernard’s corporation — Sherman A. Bernard House Moving and Shoring.
Since the remand produced no further evidence of the basic number of hours worked by the rented barge, we need only consider the issue of credits for repair time. There is .no proof in the record that the oral contract which provided for payment of the ten hour minimum fee excepted time lost because of repairs being necessary.
The detailed logs of the barge operator contained the following notation:
“7:00 A.M. to 12 Noon placing camp number 3 and rigging down. 12:00 Noon to 5:00 P.M. changing from block to bucket and repairing tag line and spud cable.” (Emphasis added.)
On remand, Dagley testified that changing from block to bucket takes IV2 to 3 hours so that we can thus deduce that the repairs took 2 to 3V2 hours. Accordingly, the record does support the awarding of a credit, at $42.50 per hour, for 3 hours of repair time not necessarily attributable to the job. Bernard also claims that the barge was not working — because of lack of friction — for one full day. His testimony is the only evidence to this effect. The detailed logs of the barge operator do not bear this out. We find no manifest error in the trial court’s denial of credit for repair time on that alleged occasion.
Accordingly, the judgment of the 25th Judicial District Court is affirmed except for that portion of the judgment which casts Bernard individually for the barge rental. In that instance, the judgment is amended and rendered against the corporation so that it is now ordered, adjudged and decreed that there be judgment herein in favor of H. B. “Buster” Hughes, Inc. and against Sherman A. Bernard House Moving and Shoring Corporation in the total amount of $22,889.78, less a credit of *1031 $127.50 (3 hours @ $42.50 per hour), plus interest from date of judicial demand, and all costs in the trial court proceedings; the claim of H. B. “Buster” Hughes, Inc. against Sherman A. Bernard individually is dismissed. All parties to this appeal are to bear their own costs.

AFFIRMED IN PART, AMENDED IN PART AND RENDERED.