# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 18-886

FARIDA SHAVKATOVA NIZAMUTDINOVA, THROUGH HER LEGAL REPRESENTATIVE RUPINDER JEET SINGH

VERSUS

KAPPA SIGMA FRATERNITY, ET AL.

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-2017-5360, DIVISION J
HONORABLE KRISTIAN DENNIS EARLES, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## ULYSSES GENE THIBODEAUX
## CHIEF JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Billy Howard Ezell, and John E. Conery, Judges.

**REVERSED AND REMANDED.**

**Thomas Reginald Hightower, Jr.**
**Patrick Wade Kee**
**P. O. Drawer 51288**
**Lafayette, LA 70505**
**Telephone: (337) 233-0555**
**COUNSEL FOR:**
    Defendant/Appellee – Camp Sledge as Agent for Kappa Sigma Fraternity and Camp Sledge

**Travis Q. Besline**
**Mickey Stephens deLaup**
**Mickey S. deLaup, APLC**
**2701 Metairie Road**
**Metairie, LA 70001**
**Telephone:  (504) 828-2277**
**COUNSEL FOR:**
>     **Defendant/Appellee – Manny Duhon as agent for Kappa Sigma Fraternity and Manny Duhon**

**Bruce David Beach**
**Keith Saverio Giardina**
**Law Offices of Keith S. Giardina**
**9100 Bluebonnet Centre – Suite 300**
**Baton Rouge, LA 70809**
**Telephone:  (225) 293-7272**
**COUNSEL FOR:**
>     **Defendant/Appellee – Alex Frederick as Agent for Kappa Sigma Fraternity and Alex Frederick**

**Melvin Alan Eiden**
**Rabalais & Hebert, LLC**
**701 Robley Drive – Suite 210**
**Lafayette, LA 70503**
**Telephone:  (337) 981-0309**
**COUNSEL FOR:**
>     **Defendants/Appellees – Kappa Sigma Fraternity, Kappa Sigma Fraternity-Epsilon-Chi Housing Corp., Kappa Sigma Fraternity-Epsilon-Chi Chapter, Kappa Sigma Frat and Kappa Sigma Frat-Epsilon-Chi Chapter, and Kappa Sigma Frat-Epsilon-Chi Housing Corp.**

**J. Neale deGravelles**
**Benjamin B. Treuting**
**deGravelles, Palmintier, LLP**
**618 Main Street**
**Baton Rouge, LA 70801**
**Telephone:  (225) 344-3735**
**COUNSEL FOR:**
>     **Plaintiff/Appellant – Farida Shavkatova Nizamutdinova, Through Her Legal Representative Rupinder Jeet Singh**

**Douglas E. Fierberg**
**Jonathon N. Fazzola**
**Fierberg Nat'l Law Group, PLLC**
**161 East Front Street – #200**
**Traverse City, MI 49684**
**Telephone: (231) 933-0180**
**COUNSEL FOR:**
> **Plaintiff/Appellant – Farida Shavkatova Nizamutdinova, Through Her Legal Representative Rupinder Jeet Singh**

**Lauren Begneaud**
**Caffery, Oubre, Campbell & Garrison, L.L.P.**
**100 East Vermillion Street – Suite 201**
**Lafayette, LA 70501**
**Telephone: (337) 232-6581**
**COUNSEL FOR:**
> **Defendant/Appellee – Imaan Ouedrago, Agent for Kappa Sigma and Imaan Ouedrago**

**THIBODEAUX, Chief Judge.**

Plaintiff, Farida Shavkatova Nizamutdinova,[1] filed a wrongful death and survival action arising out of the death of her son, Rustam Nizamutdinova, who was fatally struck by a car driven by Michael Gallagher, an allegedly severely sleep-deprived pledge of the Kappa Sigma Fraternity-Epsilon-Chi Chapter ("Epsilon-Chi") at the University of Louisiana at Lafayette ("ULL"). Named as defendants, among others, were Camp Sledge, Imaan Ouedrago,[2] Manny Duhon, and Alex Frederick, individually and in their official capacities as members of the Epsilon-Chi's Executive Board (collectively "Individual Defendants"); Epsilon-Chi; and Kappa Sigma Fraternity ("Kappa Sig"). In response, the Individual Defendants each filed peremptory exceptions of no cause of action.

The trial court granted all four exceptions, outright dismissing Plaintiff's suit against Mr. Sledge, individually ("Sledge Judgment"). However, the trial court allowed Plaintiff seven days to amend her petition as to Mr. Ouedrago, Mr. Duhon, and Mr. Frederick. After Plaintiff timely amended her petition, the trial court, upon their motions, dismissed, with prejudice, Plaintiff's claims against Mr. Ouedrago ("Ouedrago Judgment"), Mr. Fredrick ("Fredrick Judgment"), and Mr. Duhon ("Duhon Judgment"), individually. It reasoned that no individual duty existed to Mr. Gallagher.

Plaintiff separately appealed all four judgments. In docket number 18-886, Plaintiff appeals the Sledge Judgment, and in docket numbers 18-888, 19-80, and 19-82, Plaintiff appeals the Ouedrago Judgment, the Frederick Judgment, and

---

[1]Plaintiff filed the petition through her legal representative, Rupinder Jeet Singh.

[2]The petition spells the name "Ouderago" as "Ouderaogo."

the Duhon Judgment, respectively. All the appeals have been consolidated for briefing and argument purposes.

Under our de novo review of the record, we find the trial court erred in dismissing Plaintiff's suit against Mr. Sledge without first allowing Plaintiff to amend her petition in accordance with La.Code Civ.P. art. 934. We further find that Plaintiff's amended petition alleges facts sufficient to state causes of action in negligence against the remaining Individual Defendants in their individual capacities. Accordingly, we reverse the judgments of the trial court.

I.

## ISSUES

Plaintiff raises the following issues for this court's review:

(1)  whether the Trial Court erred in determining no "individual duty" existed, and no cause of action was stated, as to Defendant-Appellee Sledge.

(2)  whether the Trial Court abused its discretion and/or committed manifest error when it dismissed, with prejudice, Plaintiff-Appellant's claims against Defendant-Appellee Sledge, individually, without first affording Plaintiff-Appellant an opportunity to amend pursuant to La.Code Civ.P. art. 934.

(3)  whether the Trial Court erred in determining no "individual duty" existed, and no cause of action was stated, as to Defendant-Appellee Ouedrago.

(4)  whether the Trial Court erred in determining no "individual duty" existed, and no cause of action was stated, as to Defendant-Appellee Duhon.

(5)  whether the Trial Court erred in determining no "individual duty" existed, and no cause of action was stated, as to Defendant-Appellee Frederick.

2

## II.

## __FACTS AND PROCEDURAL HISTORY__

While driving home in the early morning hours of November 6, 2016, Mr. Gallagher fell asleep, veered off the roadway, and struck Mr. Rustam, a ULL student, who was walking south on Johnston Street in Lafayette, Louisiana, just miles from the Kappa Sig fraternity house. Mr. Rustam was pronounced dead at the scene.

Plaintiff filed suit against the various defendants alleging that, as a result of the severe hazing he endured as an Epsilon-Chi pledge, Mr. Gallagher suffered from extreme exhaustion, fatigue, and sleep deprivation, which ultimately led to the accident that caused her son's death. In her original petition, Plaintiff brought claims against the Individual Defendants for their alleged negligence in, *inter alia*:

1. authorizing, encouraging, permitting, giving substantial support to, or participating in the hazing of the Epsilon-Chi pledges, including Mr. Gallagher, who fell asleep while driving after being hazed and killed Rustam;

2. failing to intervene to stop the hazing which put the pledges and others at risk of harm; failing to properly discipline members of Epsilon-Chi; failing to properly implement and enforce risk management guidelines; failing to properly manage and supervise Epsilon-Chi; failing to adequately train members of Epsilon-Chi; and relying on untrained members to manage Epsilon-Chi, its activities, and the enforcement of laws, rules, and policies against hazing;

3. failing to exercise reasonable care when the injuries and death caused by hazing could have been prevented by [their] exercise of reasonable care,

particularly because [the Individual Defendants], in the exercise of reasonable care, should have known that hazing intentionally and recklessly inflicts physical and emotional distress on those subject to hazing, putting them and others at risk; and

4.   failing to have and/or to follow and/or enforce adequate risk management policies and procedures so as to have discovered and/or prevented and/or protected against the hazing of the pledges of Epsilon-Chi which led to the accident that caused Rustam's death.

In response, Mr. Sledge filed his peremptory exception of no cause of action on November 13, 2017. The trial court heard and sustained the exception on April 9, 2018, dismissing, with prejudice, Plaintiff's claims against Mr. Sledge, individually, without affording Plaintiff leave to amend her petition. Although finding that the petition stated a cause of action against the Individual Defendants as agents or officers of the fraternity, the trial court did not "think they have an individual duty separate and distinct from their agency relationship, if one exists, with the fraternity and its policies, rules and regulations. If they were simply enforcing that or acting in accordance with that, then I don't see the individual responsibility."[3]

Thereafter, the other Individual Defendants filed similar exceptions, which the trial court granted, giving Plaintiff seven days to amend her petition pursuant to La.Code Civ.P. art. 934. Plaintiff timely filed her First Amended

_____

[3]Plaintiff filed an application for writ to this court on June 28, 2018, which Mr. Sledge opposed. He also filed a motion to dismiss, which this court denied. This court also denied and remanded the writ with instructions that the Sledge Judgment was an appealable judgment, pursuant to La.Code Civ.P. art. 1915(A)(1), and that the court would treat Plaintiff's notice of intent as a timely filed motion for appeal. *Farida Shavkatova Nizamutdinova v. Kappa Sigma Fraternity, et al.*, 18-514 (La.App. 3 Cir. 8/29/18) (unpublished writ decision). Plaintiff's appeal was then held in abeyance pending the lodging of appeals from the other Individual Defendants' judgments.

4

Petition, in which she again detailed the extensive hazing the Epsilon-Chi pledges allegedly endured in the fall of 2016.

In her amended petition, Plaintiff described the alleged hazing that occurred during the week of October 29, 2016, up and through November 6, 2016, at the hands of Epsilon-Chi members that allegedly exacerbated the pledges' exhaustion, fatigue, and sleep deprivation:

- Epsilon-Chi pledges were required "to be at the K-Sig fraternity house at ULL at all times unless the pledges were in class so that the pledges could build a 'pepper' signature to the Epsilon-Chi," which the members destroyed several times during the week, forcing the pledges "to start all over" and "to protect it while members threw balls, cans and other objects to try to ruin the pepper and prolong" its completion;

- Epsilon-Chi pledges were only allowed "to leave the K-Sig fraternity house at midnight to go home to shower, but instructed . . . to return to the houses of Epsilon-Chi members to sleep," where the pledges' sleep was restricted by the members who required the pledges "to do calisthenics late into the night, to box and/or wrestle each other, or to stay awake around fires telling stories";

- Epsilon-Chi pledges, on November 4, 2016, were required "to build and work on Epsilon-Chi's parade float," which they had to complete "before the ULL homecoming football game scheduled for the following day, on November 5, 2016." This required the pledges "to work late through the night on November 4, 2016, and into the early morning hours of November 5, 2016, without sleep." They were allowed to go home around 5:00 a.m. or 6:00 a.m. on November 5, 2016, but were told "to be back to the float by 8:30 a.m. on November 5, 2016"; and

- Epsilon-Chi pledges were required "to ride on [the] float," were directed "to consume alcohol," and were made to "set up and attend the fraternity's tailgate."

5

The petition further alleged that Epsilon-Chi members called certain pledges, including Mr. Gallagher, throughout the night of November 5, 2016, and early morning hours of November 6, 2016, "to serve as designated drivers for intoxicated Epsilon-Chi members." As a result, the pledges, including Mr. Gallagher, were continually on the road and forced to stay awake to serve as drivers that evening and into the early morning hours, which resulted in at least three auto accidents that weekend. One of those accidents occurred after an exhausted and sleep-deprived Mr. Gallagher fell asleep while driving home, just miles from the fraternity house.

The amended petition further alleged that the hazing that caused Mr. Gallagher's dangerously "exhausted, fatigued, sleep deprived and otherwise compromised physical and mental state[]" was carried out "with the knowledge, authorization, encouragement, support, permission and/or participation of [the Individual Defendants]," specifically "as a condition of, prerequisite to, and requirement for initiation and membership in Epsilon-Chi and K-Sig," despite each agreeing in writing, on multiple occasions, to refrain from, prevent, and immediately report such conduct to Kappa Sig and ULL.

Moreover, the petition alleged that the Individual Defendants knew that the alleged hazing violated Kappa Sig's Code of Conduct and Standards of Conduct, and Epsilon-Chi's chapter by-laws which they, as executive officers, had agreed to uphold and enforce, as well as Louisiana law and ULL's Code of Conduct and Anti-Hazing Policy. These various codes and by-laws allegedly proscribed hazing activities that endangered the mental and physical health or safety of a student, including sleep deprivation. Kappa Sig's provisions specifically prohibited fatigue-creating activities, including sleep deprivation, as well as personal servitudes and

"'activities a prerequisite to or as a requirement for membership or initiation in the Fraternity which exposes any initiate(s) or pledge(s) to any type of physical danger regardless of degree.'" The Individual Defendants' failure to abide by these rules "created an unreasonable and reasonably foreseeable risk of harm, damage and injury to the Epsilon-Chi pledges, third parties, and the public."

Despite this "knowledge," their "position[s] of authority within Epsilon-Chi[,]" and their written "agreements" to prevent, refrain from, and immediately report hazing, the Individual Defendants each allegedly "failed to take any meaningful action" to prevent, refrain from, or report the hazing; instead, each "authorized, encouraged, gave substantial support to, permitted, and/or participated in" it. According to the amended petition, the Individual Defendants' actions and inactions had the effect of "rendering the pledges exhausted, fatigued and sleep deprived and compromised their physical and mental states." And as a direct result, the severely sleep-deprived Epsilon-Chi pledges, who had been awake for more than seventy-two hours straight and acting as designated drivers throughout the night and early morning hours of November 6, 2016, specifically Mr. Gallagher, were placed in perilously dangerous positions for both themselves and the public, which ultimately resulted in the accident that killed Mr. Rustam.

In response to the amended petition, Mr. Ouedrago filed a motion to dismiss, which the trial court granted at a July 16, 2018 hearing, "[f]inding that the cause of action, the individual liability has not been stated." The trial court subsequently entered written reasons, opining that the first amended petition "failed to state an individual duty owed by Mr. Ouedrago to Michael Gallagher on the date of the accident made subject of this lawsuit."

7

Mr. Frederick and Mr. Duhon also filed peremptory exceptions of no cause of action to the first amended petition, which the trial court likewise granted, dismissing, with prejudice, Plaintiff's claims against them. Again, the trial court reasoned that the amended petition failed to state an "individual duty owed by Mr. Frederick [or Mr. Duhon] to Michael Gallagher on the date of the accident" that killed Mr. Rustam.

III.

## STANDARD OF REVIEW

Appellate courts review the judgment of the district court relating to an exception of no cause of action de novo "because the exception raises a question of law and the lower court's decision is based solely on the sufficiency of the petition." *Ramey v. DeCaire*, 03-1299, pp. 7-8 (La. 3/19/04), 869 So.2d 114, 119.

IV.

## LAW AND DISCUSSION

A peremptory exception of no cause of action questions whether the law extends a remedy to anyone under the factual allegations of the petition. Its function "is to test the legal sufficiency of the petition by determining whether the law affords a remedy on the facts alleged in the pleading." *Everything on Wheels Subaru, Inc. v. Subaru S., Inc.*, 616 So.2d 1234, 1235 (La.1993). "No evidence may be introduced at any time to support or controvert the objection that the petition fails to state a cause of action." La.Code Civ.P. art. 931. "Every reasonable interpretation must be accorded the language of the petition in favor of maintaining its sufficiency and affording the plaintiff the opportunity of presenting evidence at trial." *Indus. Cos., Inc. v. Durbin*, 02-665, p. 7 (La. 1/28/03), 837 So.2d 1207, 1213. "All

8

reasonable inferences are made in favor of the nonmoving party in determining whether the law affords any remedy to the plaintiff." *City of New Orleans v. Bd. of Dirs. of La. State Museum*, 98-1170, p. 9 (La. 3/2/99), 739 So.2d 748, 755.

> Consequently, the court reviews the petition and accepts well-pleaded allegations of fact as true. The issue at the trial of the exception is whether, on the face of the petition, the plaintiff is legally entitled to the relief sought.
>
> Louisiana has chosen a system of fact pleading. Therefore, it is not necessary for a plaintiff to plead the theory of his case in the petition. However, the mere conclusions of the plaintiff unsupported by facts does not set forth a cause of action.
>
> The burden of demonstrating that the petition states no cause of action is upon the mover. . . . The pertinent question is whether, in the light most favorable to plaintiff and with every doubt resolved in plaintiff's behalf, the petition states any valid cause of action for relief.

*Ramey*, 869 So.2d at 118-19 (citations omitted).

Moreover, even if a petition does not allege facts sufficient to state a valid cause of action, La.Code Civ.P. art. 934 mandates:

> When the grounds of the objection pleaded by the peremptory exception may be removed by amendment of the petition, the judgment sustaining the exception shall order such amendment within the delay allowed by the court. If the grounds of the objection raised through the exception cannot be so removed, or if the plaintiff fails to comply with the order to amend, the action, claim, demand, issue, or theory shall be dismissed.

At the outset, we note that the trial court erred in failing to allow Plaintiff to amend her petition prior to dismissing her claims against Mr. Sledge, individually, as required by La.Code Civ.P. art. 934. *See State, Dep't of Wildlife and Fisheries v. Gulfport Energy Corp.*, 12-356 (La.App. 3 Cir. 11/7/12), 125 So.3d 468.

Because the trial court allowed Plaintiff to amend her petition as to the remaining Individual Defendants, we must now review the amended petition, accepting all of the allegations as true and in a light most favorable to Plaintiff, to determine whether it states any valid cause of action for relief against the Individual Defendants, in their individual capacities. Stated another way, this court must determine whether the amended petition sets forth *any* facts under which our law could recognize that the Individual Defendants owed Plaintiff a duty to protect against the harm sustained.

In her brief to this court, Plaintiff argues that she has alleged sufficient facts to show that: (1) the Individual Defendants assumed a legal duty to exercise reasonable care in performing the tasks they all, as executive members, voluntarily undertook "to discourage, report, refrain from, and intervene to stop hazing at Epsilon-Chi," which they subsequently breached; (2) each of the Individual Defendants "owed a general duty to Mr. Gallagher and the public to refrain from authorizing, encouraging, permitting, supporting, failing to report, and/or participating in hazing that presented foreseeable risks of harm, such as the hazing that caused the accident that killed Rustam;" and (3) "the various social, moral, and economic factors . . . fully support imposing a duty on the [Individual] Defendants[], under the facts and circumstances alleged, to prevent, report, and refrain from authorizing, encouraging, or participating in the hazing of Epsilon-Chi pledges."

In opposition, the Individual Defendants argue Plaintiff has failed to allege facts giving rise to a duty on the part of the Individual Defendants to prevent Mr. Gallagher's actions or to articulate the relationship between Mr. Rustam and the Individual Defendants, which could give rise to a finding that they owed a duty to Plaintiff. Rather, the allegations confirm that any and all acts by the members of the

10

fraternity, specifically the Individual Defendants, were undertaken as an agent for the fraternity and not as individuals.

Although the trial court agreed with the Individual Defendants, we do not. If we accept all allegations as true, then the Individual Defendants, as both members and executive officers of Epsilon-Chi, would have had a duty to abstain from hazing pledges, like Mr. Gallagher, arising from our general negligence law as well as Kappa Sig's Code of Conduct and Standards of Conduct, Epsilon-Chi's chapter by-laws, and ULL's Code of Conduct and Anti-Hazing Policy. By voluntarily assuming the responsibilities of executive officers, these men would further have had a duty to abide by and uphold Kappa Sig's Code of Conduct and Standards of Conduct as well as Epsilon-Chi's chapter by-laws by preventing and not engaging in the hazing of pledges, like Mr. Gallagher.

According to the petition, each of the Individual Defendants breached these duties by authorizing, encouraging, permitting, giving substantial support to, or participating in the hazing of the Epsilon-Chi pledges, including Mr. Gallagher, which was explicitly proscribed by Kappa Sig. Their negligence, particularly from October 29, 2016 through November 6, 2016, directly resulted in or exacerbated the pledges' exhaustion, fatigue, and sleep deprivation, creating an unreasonable and foreseeable risk of harm to the pledges, third parties, and the public. And as a direct result of the Individual Defendants' actions and inactions, Mr. Gallagher, in his dangerously altered and impaired mental and physical state on the morning of November 6, 2016, was placed in a perilously dangerous position for both himself and the public. His falling asleep at the wheel and fatally striking Mr. Rustam then gave rise to the harm sustained by Plaintiff, a harm for which the various anti-hazing provisions were drafted and enacted to prevent.

11

Whether Plaintiff can prove all of these allegations is of no moment to this discussion. What is of importance is that Plaintiff has ***alleged*** facts sufficient to give rise to a personal duty under the various codes and contracts of the university and the fraternity as well as our general negligence law, which explicitly and unambiguously obligates every man to repair the damage caused by his fault, La.Civ.Code art. 2315, whether occasioned by his actions, "his negligence, his imprudence, or his want of skill." La.Civ.Code art. 2316. "A breach of a duty on the part of the defendant which was imposed to protect against the risk involved makes the offender negligent under the above articles." *Morris v. Orleans Par. Sch. Bd.*, 553 So.2d 427, 429 (La.1989).

The duty Plaintiff alleges herein is to not engage in, encourage, authorize, or substantially support hazing activities, which can dangerously and severely impair the mental and physical state of a pledge. By their alleged actions of authorizing, encouraging, permitting, giving substantial support to, or participating in the proscribed hazing, Plaintiff has alleged facts sufficient to constitute a breach of the duty.

The scope of protection afforded by this duty could very well extend to harm occasioned by a severely and dangerously impaired pledge's interaction with the general public. The alleged risk—that a perilously sleep-deprived pledge would fall asleep at the wheel, on his way home after days of sleep-depriving activities and hours of acting as a designated driver, and fatally strike a pedestrian, just miles from his home and the fraternity house—could clearly be found to be within the scope of the anti-hazing duty. This is particularly true as the petition alleges the main purpose behind the anti-hazing provisions is the prevention of harm to both pledges and the

12

general public, resulting from a pledge's mental and physical impairment induced by the prohibited hazing activities.

While not the sole cause of the harm herein, i.e., Mr. Rustam's death, Plaintiff does allege that the Individual Defendants' conduct is a necessary antecedent thereto. And a jury could very well reasonably find that Plaintiff, more probably than not, would not have suffered damages, absent Defendants' conduct.

Plaintiff has also, by alleging that the hazing activities are proscribed by the national fraternity and even the by-laws of the chapter, pled facts sufficient to impose personal liability on the officers for conduct explicitly prohibited by the organizations for which they serve as officers. Rather than shielding an officer or agent in such circumstances,

> [t]he law is settled that if an officer or agent of a corporation through his fault injures another to whom he owes a personal duty, whether or not the act culminating in the injury is committed by or for the corporation, the officer or agent is liable personally to the injured third person, and it does not matter that liability might also attach to the corporation.

*H. B. Buster Hughes, Inc. v. Bernard*, 318 So.2d 9, 12 (La.1975). Moreover, to allow the Individual Defendants to escape a potential duty and concomitant liability solely because of membership in a fraternity would allow them to perform any prohibited act with impunity. No disincentive would exist because the Individual Defendants' alleged egregious conduct, if proven, would be immunized.

Accordingly, Plaintiff, through her amended petition, has alleged the breach of a duty on the part of the Individual Defendants that was allegedly imposed to protect against the harm sustained and that was a contributing cause thereto. If Plaintiff can prove these allegations by a preponderance of the evidence, then a jury

13

could reasonably find the Individual Defendants were negligent and liable to Plaintiff for the death of her son.

Accordingly, accepting all of the allegations in Plaintiff's amended petition as true and applying the legal principles set forth above, we, therefore, find Plaintiff's petition alleges facts sufficient to state a cause of action in individual negligence against the Individual Defendants. Accordingly, we reverse the judgments of the trial court dismissing, with prejudice, Plaintiff's claims against the Individual Defendants. We also remand this matter to the trial court with instructions to allow Plaintiff leave to amend her petition as to her claims against Mr. Sledge.

V.

## CONCLUSION

For the foregoing reasons, the judgments of the trial court are reversed, and this matter is remanded with instructions to allow Plaintiff to amend her petition as to her claims against Mr. Sledge.

Costs of this appeal are assessed to the Defendant/Appellee, Camp Sledge.

**REVERSED AND REMANDED.**