SCHOTT, Judge.
This executive officer suit by plaintiff, Wallace J. Carter, against David L. Poin-dexter, John McKee, and Robert Gersten-korn,[1] arises out of plaintiff’s contracting silicosis from working with and around dia-tomaceous earth during his employment in the earth-regenerating plant at the American Sugar Refinery in Arabi, Louisiana, from 1960 to 1971. The case was tried before a commissioner of the Civil District Court who recommended dismissal of plaintiff’s suit. Plaintiff has appealed from a judgment denying his exceptions to the report and dismissing his suit. In this court, plaintiff takes issue with the commissioner’s finding that Poindexter was not negligent and the trial court’s application of the principles set forth in Canter v. Koehring, 263 La. 233, 267 So.2d 726 (La.1973) relative to executive officer liability.
Diatomaceous earth is a powdery substance used in the process of filtering sugar. In his capacity as a “fireman” plaintiff had the duty of adding sacks of fresh diatoma-ceous earth to a filtration system and retrieving, recycling, sometimes resacking and redepositing into the system the used diatomaceous earth. This material has a high silica content and because it was in the form of powder a considerable quantity of the material would enter the atmosphere and affect the environment wherever it was used. As a result plaintiff was, over this long period of time, exposed to this silica dust which finally caused his silicosis. He was supplied with masks which were supposed to protect him from inhaling the substance but the quality of the masks, the availability of them to plaintiff during all of his working time, and the extent to which plaintiff was warned about the necessity for using the masks were placed at issue by the plaintiff.
The company purchased the diatomaceous earth from three different suppliers over these years. Printed on the bags in which the material came to plaintiff are the following messages from each of the suppliers:
*809 “CAUTION
This product consists of amorphous diato-maceous silica plus varying percentages of inverted microcrystalline silica. Inhalation of diatomaceous earth dust may be harmful. Avoid breathing this dust. Dust should be kept to a minimum by proper controls. Respirators or dust masks approved by the U. S. Bureau of Mines for silica dust are recommended.”
“CAUTION
‘Dicalite’ material consists of an almost pure amorphous diatomaceous silica plus varying percentages of crystalline silica. Inhalation of silica dust over long periods may be harmful. This material should be used so as not to create dust or — if this is not possible — employees should be equipped with adequate protective devices.”
“CAUTION
This product consists of amorphous diato-maceous earth plus varying percentages of crystalline silica. Inhalation of such dust over long periods of time may be harmful. If dust is created during use, adequate protection devices are recommended.”
Plaintiff was aware of these warnings on the bags and he used the face masks when dusty conditions were apparent to him but he did not wear the masks at other times. The masks provided to plaintiff were not of the type approved by the United States Bureau of Mines because the approved masks are to be held on by two bands around the head rather than the one band on the masks which plaintiff used. However, the material of which the mask is made and the general configuration was the same. The commissioner concluded from the evidence that it “negated any suggestion that, as regularly used, the mask did not fit the face properly.” He based this conclusion on the plaintiff’s testimony that when he wore a mask it occasionally became necessary for him to obtain a fresh mask when his breathing became difficult due to the accumulation of dust and perspiration on the mask.
Plaintiff produced an expert witness who testified that the close fit of the mask was essential, thereby raising the inference that plaintiff might not have contracted silicosis had he been using the approved two band mask instead of the one band mask over these years, but this testimony was to some extent speculative and not sufficiently compelling for us to conclude that the commissioner’s finding in this regard was manifestly erroneous. Arceneaux v. Dominique, 365 So.2d 1330 (La.1978).
Poindexter was not familiar with the warnings on the bags or that inhalation of diatomaceous earth might cause silicosis. The commissioner concluded that the link between the substance and the disease was not known to Poindexter and based his conclusion in part on the fact that company history did not show that any other employee had ever contracted silicosis during the long period while the material was being used.
Plaintiff takes issue with this finding and argues that danger of diatomaceous earth dust was well known by 1960. He bases this argument on the testimony of his expert, Mr. Goddard, but the record shows that when asked whether there was a body of information indicating the hazards of diatomaceous earth to the individual he made the following vague reference:
“.... There is an article in literature ... if I recollect, in 1934 by a group in California ... [and] another study by a couple of gentlemen .... in either ’54 or ’57. There was some work done in ’46, I believe, that was published.”
We fail to see how this testimony of a man who has made a specialized study of problems in the environment affecting the respiratory system can serve to prove that this was generally known, or should have been known to Poindexter and others similarly situated. We find no manifest error in the commissioner’s conclusion in this regard or in the following statement by the commissioner:
*810 “Consequently, the court cannot find that the use of this material, together with the face masks provided, gave rise to a situation which would constitute a known unsafe place to work.”
In any event, the principal weakness of plaintiff’s case is his attempt to hold Poin-dexter liable for his injury. In the Canter case it was held that personal liability cannot be imposed upon an executive officer simply because of his general administrative responsibility for performance of some function of employment:
“.... He must have a personal duty toward the injured plaintiff, breach of which specifically has caused the plaintiff’s damages. If the defendant’s general responsibility has been delegated with due care to some responsible subordinate or subordinates, he is not himself personally at fault and liable for the negligent performance of this responsibility unless he personally knows or personally should know of its non-performance or mal-per-formance and his nevertheless failure to cure the risk of harm.”[2]
Poindexter was the general manager of the sugar refinery which was a sprawling complex on 77 acres of land and consisted of a number of buildings providing 77 acres of floor space. The number of employees ranged between 800 in 1960 and 540 in 1970. Between him in his capacity of refinery manager were layers of management and supervisory personnel in the chain of command leading down to plaintiff who was in a crew of 15 employees under the supervision of a foreman. Poindexter delegated safety and sanitation to his manager of administrative services who in turn delegated this responsibility to a manager of safety, sanitation and services as distinguished from industrial engineering and personnel departments. The record shows that Poindexter’s subordinates to whom he made these delegations were experienced and educated employees. Plaintiff argues that Poindexter was negligent if not in reading the cautions on the bags of diato-maceous earth than in failing to know that his subordinates were not reading those cautions. He contends that the negligence of Poindexter’s subordinates in not being aware of the danger of the environment in which plaintiff was working, not being aware of the inadequacy of the masks provided, not seeing to it that plaintiff wore his mask at all times, and not being aware of the warnings printed on the bags of the substance, is somehow imputable to Poin-dexter. The commissioner found, and we agree that this situation is precisely what the Canter case was referring to when it spoke of the delegation of a general responsibility to a responsible subordinate. This is what Poindexter did and because there was no evidence that he personally knew or personally should have known that someone down the line was not discharging his responsibility Poindexter is not liable to plaintiff.
Accordingly, the judgment appealed from is affirmed.
AFFIRMED.

. The thrust of plaintiff’s appeal is against Poindexter alone.
The evidence did not tie the other defendants in with plaintiffs work for the time in question.

. See also Downey v. Callery, 338 So.2d 937 (La.App. 4th Cir. 1976) writs refused, 340 So.2d 1390 (La.).