689 So.2d 536 (1997)
John Vernon LAURENTS and Mary Jean Laurents, Plaintiffs-Appellees,
v.
LOUISIANA MOBILE HOMES, INC., North River Homes, Inc. and Thomas Reid, Defendants-Appellants.
No. 96-976.
Court of Appeal of Louisiana, Third Circuit.
February 5, 1997.
*537 Peter A. Ciambotti, Lake Charles, for Plaintiffs-Appellees.
John Lee Van Norman, III, Lake Charles, for Defendants-Appellants.
Before SAUNDERS, PETERS and AMY, JJ.
PETERS, Judge.
This suit arises out of a contract for the purchase of a mobile home. John Vernon Laurents and his wife, Mary Jean Laurents, filed a Petition for Damages for Violation of the Louisiana Fair Trade Practices Act, Fraud, Breach of Warranty, Breach of Contract, *538 and Deceit, naming as defendants North River Homes, Inc. (North River), the manufacturer of the mobile home; Louisiana Mobile Homes, Inc. (LMHI), the retail seller of the mobile home; and Thomas Reid, the general manager for LMHI. The plaintiffs sought damages, penalties, and attorney fees from the defendants for the untimely delivery of the mobile home; for defects in its structure and workmanship; for nonconformity of the mobile home to the contract; for false representations and fraud; and for refusal to return their deposit on the mobile home.
The plaintiffs settled their claim against North River prior to trial, and North River was dismissed from the litigation by a trial-court order. After trial, the trial court rendered judgment in favor of the plaintiffs and against Mr. Reid and LMHI in the amount of $9,000.00. The $9,000.00 judgment included $3,000.00 for the unreturned deposit; $2,000.00 for mental anguish, distress, and humiliation; and $4,000.00 for attorney fees. The defendants have appealed this judgment, and the plaintiffs have answered the appeal, seeking an increase in general damages to $8,000.00 and an increase in attorney fees to $5,000.00 for the appeal.

DISCUSSION OF THE RECORD
On May 28, 1993, the plaintiffs entered into a written purchase-order contract with LMHI in which they agreed to purchase a 1993 North River manufactured mobile home. The contract included a floor plan of a standard three-bedroom mobile home which was modified to meet the plaintiffs' requirements. By these modifications, the plaintiffs required, among other things, that the three-bedroom model be converted to two bedrooms, that various appliances and a solid steel front door be added, that the cabinets in the kitchen and bathrooms be changed, that the carpet be of particular color, that a wall between the living room and the dining room be deleted, and that larger windows and vinyl siding be installed. In the negotiations giving rise to the contract, Mr. Reid acted on behalf of LMHI, and he was directly involved in making the modifications to the standard specification sheet attached to the contract. At the time the contract was signed, the plaintiffs tendered a deposit of $3,000.00 to LMHI.
According to the plaintiffs, during the contract negotiations, they informed Mr. Reid of the importance of a quick delivery date for the finished product. This urgency was required because the plaintiffs had sold their previous home and were living in a garage built by Mr. Laurents and his friends. These living conditions were spartan at best and were totally unsuitable. According to the plaintiffs, not only was Mr. Reid made aware of their living arrangement, but he informed them that the mobile home could be available within four weeks from the day it was ordered. The plaintiffs contend that based on this assurance, they entered into the purchase-order contract for the mobile home. Mr. Reid denied any knowledge that the time of delivery was important to the plaintiffs, and he testified that he only told the plaintiffs that if the factory could get it built, the mobile home would be shipped within four weeks, weather permitting. The contract is silent as to a delivery date.
LMHI is merely a mobile home dealer and does not have any part in the actual manufacturing process. After the contract and diagrams were completed, Mr. Reid faxed the diagrams to Robert Hartgrove, a North River sales representative in Conway, Arkansas. Mr. Hartgrove testified that ordinarily when he received an order form, he had his in-house draftsmen review it to determine the feasibility of the plan, and if feasible, he would then fax the order to the North River manufacturing plant in Hamilton, Alabama. However, in this case, he was unable to say whether this particular order was ever turned over to his draftsmen. It is obvious that in this case, either the special instructions were not forwarded to the manufacturing plant or were ignored at the time of construction.
In the next few weeks after the contract was signed, Mrs. Laurents had numerous conversations with Mr. Reid. According to Mrs. Laurents, every time she called, Mr. Reid told her that he had talked with the factory and that construction of the mobile home was progressing according to schedule. *539 However, according to Mrs. Laurents, following the four-week period, Mr. Reid called to inform them that the mobile home would not be delivered within the promised time.
Apparently, the North River factory shuts down for two weeks in July. Mr. Reid testified that Mr. Hartgrove told him North River would try to process the order and have the mobile home built before the shutdown, but Mr. Reid testified that Mr. Hartgrove was not successful in doing so. Mr. Hartgrove testified that, given the time of year and the complexity of this special order, the mobile home ordered would have required more than thirty days to build. In any event, Mr. Reid called the plaintiffs on either Thursday, July 22, 1993, or Friday, July 23, 1993, to inform them that the mobile home had arrived. On Saturday, July 24, 1993, the plaintiffs went to inspect the mobile home and found it to be unacceptable.
Specifically, the mobile home failed to comply with the contract specifications in the following respects:
 The bathroom cabinets had a light cherry stain rather than a whitewash stain.
 The carpet in the master bedroom and bathroom was blue rather than mauve.
 There was no larger kitchen window.
 There was no window above the master bathroom toilet as called for in the basic-model floor plan.
 The shelves in the living room had doors and a countertop while the specifications called for shelves without doors and a countertop.
 The front door had a window so that it was not a solid steel front door.
 The cabinets elsewhere had a light cherry stain rather than a light oak stain.
 There was an "up charge" of $200.00 for the range, which was obtained from Sears, as Mrs. Laurents did not want the range that was included in the North River package.
Additionally, the mobile home had the following defects:
 The Formica over the dishwasher was rough looking.
 The carpet was raveled from underneath the shower stall in the master bathroom.
 The trim was coming up in a spot on the kitchen cabinet top.
 There was a crack in the wall in the den.
 The fireplace in the living room had staple or nail holes in it which were daubed over with a lighter color paint.
 The woodwork on the fireplace was cracked.
 Sheetrock edges jutted out of a bedroom window facing.
 In the master bathroom, a hole was visible from underneath a fixture.
 Vinyl was coming off and buckling on the outside of the mobile home.
 Staples were coming out from the vinyl siding, and the insulation was showing underneath.
 There was a separation of the metal from the frame of a window.
While Mr. Reid testified that he was aware that certain problems existed with the mobile home at the time of inspection, Mrs. Laurents testified that Mr. Reid would not even acknowledge that there were any differences between the mobile home delivered and the one specified by the contract, much less other problems.
The plaintiffs refused to take delivery of the mobile home. Mr. Laurents called Mr. Reid on Monday, July 26, 1993, and requested the return of the deposit, and Mr. Reid refused to return the deposit. According to Mr. Laurents, Mr. Reid told him to call Delmo Payne, the factory representative, if he had a problem. Mr. Laurents did call Mr. Payne, who told him that the mobile home was built according to the print he received. Mr. Laurents testified that after he talked to Mr. Payne, he called Mr. Reid again and discussed what was wrong with the mobile home. According to Mr. Laurents, Mr. Reid still refused to acknowledge that the mobile home was not according to specifications.
By letter dated August 1, 1993, the plaintiffs informed Mr. Reid that they found the mobile home was not in compliance with the contract, listed the defects, and requested the return of their deposit. The plaintiffs then sought legal advise, and by letters dated *540 August 6 and August 27, 1993, their attorneys demanded the return of the deposit. On September 7, 1993, by letter through its attorney, LMHI still contended that the mobile home was delivered according to the proposed plans and specifications, although it did offer to make small, minor repairs. While Mr. Reid testified that he had informed the plaintiffs that LMHI would correct the problems, it was not until October 8, 1993, that LMHI finally, through its attorney, expressed in writing a willingness to work with the plaintiffs to resolve the complaints of noncompliance with the contract.
The trial court found that the mobile home delivered was substantially different from the one the plaintiffs had ordered, that there were misrepresentations by Mr. Reid, and that there were violations of the Louisiana Unfair Trade Practices Law. In rendering judgment in favor of the plaintiffs, the trial court held Mr. Reid personally liable and liable in solido with LMHI. The defendants appeal, contending that the trial court erred in its interpretation of the language of the contract; in finding that the refusal to return the $3,000.00 deposit was a misrepresentation and/or deception within the definition of the Louisiana Unfair Trade Practices Law; in awarding damages and attorney fees; and in finding that Mr. Reid was personally liable. The plaintiffs have answered this appeal, seeking an increase in damages and attorney fees.

OPINION

Refund of Deposit
The defendants contend that the trial court erred in awarding $3,000.00 for the return of the deposit. Their argument is based on language found on the first page of the purchase-order contract, which reads as follows:
For the mutual benefit of both buyer and seller, it is agreed that the buyer will place, this day a firm offer for the manufactured home of the buyer's choice. It is also understood that as of this 28th day of May, 1993, this order is placed and is irrevocable. Should the buyer default, terminate of renege on this outstanding sales contract under which this manufactured home is ordered, or deposit is received to place home on hold for purchase. The buyer will forfeit any and all downpayment on sales contract or agreement as compensatory damages to seller.[1]
The contract has no provision governing the failure of LMHI to perform.
At the time the facts of this case arose, La.Civ.Code art. 2463 provided:
But if the promise to sell has been made with the giving of earnest, each of the contracting parties is at liberty to recede from the promise; to wit: he who has given the earnest, by forfeiting it; and he who has received it, by returning the double.
Additionally, at the time this contract was entered into, a judicial presumption existed that any deposit made pursuant to a contract to sell was earnest money unless the contracting parties expressly stipulated to the contrary. Sunbelt One v. Melian, 509 So.2d 705 (La.App. 3 Cir.1987). Earnest money included money deposited on account of the purchase price under a contract to sell, although described as or intended at the time of the consummation of the proposed sale to be applied on the purchase price. Id. The deposit in the instant case is clearly earnest money.
It is the defendants' position that because the purchase order provided that the order was irrevocable and because the plaintiffs withdrew their performance, the agreement should be enforced as written and the plaintiffs should not be entitled to the return of their deposit. Additionally, the defendants assert that each item incorrectly manufactured could have been and would have been corrected. They assert that certain changes occurred as a result of Mr. Hartgrove of North River altering the plans when he forwarded his rendition of the plans to the draftsmen at the plant.
*541 However, the language of the purchase order upon which the defendants relied also expressly provides that "it is agreed that the buyer will place, this day a firm offer for the manufactured home of the buyer's choice." (Emphasis added). The trial court found that the mobile home delivered was substantially different from the one the plaintiffs had ordered, and the record supports this determination. Further, the trial court found that a substantial period of time had passed before the defendants acknowledged that the mobile home was not what was ordered and did not comply with the contract, and the record supports this determination. In other words, it was LMHI who defaulted on the contract, and not the plaintiffs.
Thus, since the mobile home of the buyer's choice, as set forth in the contract specifications, was not delivered by LMHI, LMHI failed to perform under the contract. Therefore, the trial court did not err in ordering the return of the deposit. La.Civ. Code art. 2463 provided for the return of double the earnest money by the one who received it. The trial court did not order the return of double the earnest money, and that is not an issue before us on appeal. In any event, even assuming that LMHI's performance became impossible because of a fortuitous event, i.e., North River's altering of the specifications, the plaintiffs were still entitled to the return of their deposit under La.Civ.Code art. 1876, which provides for the recovery of any performance already rendered, when the entire performance owed by the other party has become impossible because of a fortuitous event.
The defendants cite Milliman v. Peterman, 519 So.2d 238 (La.App. 5 Cir.), writ denied, 520 So.2d 752 (La.1988), in which the court held that the purchasers of immovable property were not entitled to the return of their deposit since the sale did not take place. However, in that case, the purchasers failed to perform under the contract. In the instant case, LMHI, the seller, failed to perform under the contract by delivering a mobile home that was not in compliance with the contract specifications.
The defendants also cite 2L Boats, Inc. v. Fred Settoon, Inc., 440 So.2d 793 (La.App. 1 Cir.1983), writs denied, 444 So.2d 1222, 1251 (La.1984). In that case, 2L Boats, Inc. contracted with Fred Settoon, Inc. for the building of a vessel, and 2L Boats, Inc. paid a deposit in connection with the contract. For financial reasons, 2L Boats, Inc. allegedly withdrew from the contract, and Fred Settoon, Inc. retained the deposit. However, in that case, the prospective purchaser withdrew from the contract for financial reasons, and not because of the contractor's failure to perform. Since LMHI failed to perform under the contract in the instant case, this case does not support a reversal in favor of LMHI.

Unfair Trade Practices
The trial court found the following violations of the Louisiana Unfair Trade Practices and Consumer Protection Law (UTPL), La. R.S. 51:1401 et seq.: refusing to Return the $3,000.00 deposit; telling the plaintiffs that the mobile home was just what they had ordered; and prolonging the plaintiffs in having an opportunity to have the problem corrected by holding their money and leading them to believe there was nothing they could do about it because of the contract, when Mr. Reid should have offered to correct the problem sooner than he did.
La.R.S. 51:1409(A) provides in part:
Any person who suffers any ascertainable loss of money or movable property... as a result of the use or employment by another person of an unfair or deceptive method, act or practice declared unlawful by R.S. 51:1405, may bring an action individually ... to recover actual damages. If the court finds the unfair or deceptive method, act or practice was knowingly used, after being put on notice by the director or attorney general, the court shall award three times the actual damages sustained. In the event that damages are awarded under this Section, the court shall award to the person bringing such action reasonable attorney's fees and costs.
The defendants assert that no evidence was submitted that reflected that any of the actions of LMHI or Mr. Reid were in violation of any promulgated rules of the *542 Director of the Governor's Consumer Protection Division and that no evidence was submitted that the attorney general had declared that any of the acts of which the plaintiffs complain were in violation of the UTPL. We are aware of no such requirement for an award of actual damages under the UTPL. Under La.R.S. 51:1409(A), the failure to prove that the director or attorney general put the defendants on notice does not defeat the claim for actual damages and attorney fees, but only defeats the claim for treble damages.
The defendants also assert that the attorney general was not served with a copy of the complaint. La.R.S. 51:1409(B) provides in part that upon commencing any action under La.R.S. 51:1409(A), the plaintiff's attorney must mail a copy of the petition to the attorney general and director. However, La.R.S. 51:1409(B) also provides that the "failure to conform with this subsection shall not affect any of plaintiff's rights under this section." Thus, we reject the defendants' arguments in this regard.
Under La.R.S. 51:1405(A), unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are prohibited. A trade practice is considered unfair when it offends established public policy and when it is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. Thomas v. Busby, 95-1147 (La.App. 3 Cir. 3/6/96), 670 So.2d 603, writ granted and judgment vacated, 96-0891 (La.5/17/96), 673 So.2d 601, aff'd on remand, 95-1147 (La.App. 3 Cir. 11/13/96), 682 So.2d 1025. Additionally, it is left up to the courts to determine what constitutes unfair trade practices. Id.
Under the facts as found by the trial court, the defendants were aware that the mobile home was not built according to specifications, yet they refused to refund the deposit when they knew that they had failed to perform their obligation to deliver the mobile home as per the specifications. Further, the defendants refused to immediately acknowledge to the plaintiffs that the mobile home was not built according to specifications in that Mr. Reid repeatedly told the plaintiffs that the mobile home was exactly what they had ordered. Additionally, not until September 7, 1993, did the defendants offer to make small, minor repairs. These actions occurred in the context of the defendants' knowledge of the plaintiffs' living situation and of the importance of the delivery date. We find no error in the trial court's factual findings in this regard. In accordance with those factual findings, we find no error in the trial court's determination that the defendants violated the UTPL, in that the combination of the defendants' actions offended established public policy and were at least oppressive, unscrupulous, and substantially injurious to the plaintiffs.

Damages
The trial court awarded the plaintiffs $2,000.00 for mental anguish, distress, and humiliation. The defendants contend that this was error. The plaintiffs request that this court increase this portion of the award to $8,000.00.
The UTPL provides for the recovery of actual damages, which include damages for mental anguish and humiliation. Vercher v. Ford Motor Co., 527 So.2d 995 (La.App. 3 Cir.1988). According to Mrs. Laurents, she was "devastated" when Mr. Reid did not acknowledge that there was a difference between what the contract provided and what was delivered but said that the mobile home was exactly what the plaintiffs had ordered. The trial transcript reveals that when Mrs. Laurents was questioned by her attorney as to why she was devastated, she became visibly upset and stated that she did not "want to talk about that right now." Mrs. Laurents also testified that they had an old, borrowed air conditioner in the garage that broke on the same day that Mr. Reid called her to tell her that the mobile home would not be delivered on the date that he had said. She testified:
That's the day I went nuts. I had to call and get an air conditioner, call the doctor because I couldn't sleep. I was so sick from all of this mess. That's when we had to get the insulation blown in because the garage wasn't cool. Then he had to put thein the walls and the paneling to keep *543 the bugs out. That was all after the fourth week thatwhen [Mr. Reid] called and said that the trailer wasn't going to be able to be delivered in four weeks. And that's why I got so upset, because the air conditioner broke that day, and then he called that day.
Mr. Laurents confirmed that "it has bothered [Mrs. Laurents] a lot." He stated: "Well, like not sleeping at night, for one thing. When we first went through this, really, she really had a tough time."
The defendants assert that there was no expert testimony at trial to validate Mrs. Laurents' claims. Expert testimony is not required to prove mental anguish damages. See Dowden v. Mid State Sand & Gravel Co. Inc., 95-231 (La.App. 3 Cir. 11/2/95), 664 So.2d 643, writ denied, 95-2864 (La.2/2/96), 666 So.2d 1099. In the instant case, the trial court obviously chose to credit the plaintiffs' testimony in this regard, and we find no error.
As to the amount of the general damages, Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994) states:
[T]he discretion vested in the trier of fact is "great," and even vast, so that an appellate court should rarely disturb an award of general damages.... It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.
We find no abuse of the trial court's great discretion in the award of general damages. Thus, we reject the plaintiffs' and the defendants' arguments on this point.

Attorney Fees
The trial court awarded $4,000.00 in attorney fees. The defendants contend that the trial court erred in awarding attorney fees, since there was no violation of the UTPL. However, having found that the defendants did violate the UTPL, we find the attorney fee award proper since La.R.S. 51:1409(A) requires the court to award reasonable attorney fees when damages are awarded under that Section.
The plaintiffs ask for an increase in the attorney fee award to $5,000.00 for those services on appeal. We increase the attorney fee award by $ 1,000.00 for work done in connection with this appeal.

Liability of Thomas Reid
The trial court held Mr. Reid personally liable and liable in solido with LMHI. The defendants contend that the trial court erred in holding Mr. Reid personally liable.
If an officer or agent of a corporation through his fault injures another to whom he owes a personal duty, the officer or agent is liable personally to the injured third party, regardless of whether the act culminating in the injury is committed by or for the corporation and regardless of whether liability might also attach to the corporation. Cagle v. Loyd, 617 So.2d 592 (La.App. 3 Cir.), writs denied, 620 So.2d 877 (La.1993); Hemphill-Kunstler-Buhler, Auctioneers & Appraisers v. Davis Wholesale Elecs. Supply Co., Inc., 516 So.2d 402 (La.App. 1 Cir.1987), writ denied, 520 So.2d 751 (La.1988).
In Canter v. Koehring Co., 283 So.2d 716, 721 (La.1973), the supreme court set forth the circumstances under which an officer, agent, or employee is liable to a third person damaged solely by reason of the individual's breach of an employment-imposed duty:
1. The principal or employer owes a duty of care to the third person ... breach of which has caused the damage for which recovery is sought.
2. This duty is delegated by the principal or employer to the defendant.
3. The defendant officer, agent, or employee has breached this duty through personal (as contrasted with technical or vicarious) fault. The breach occurs when the defendant has failed to discharge the obligation with the degree of care required by ordinary prudence under the same or similar circumstanceswhether such failure be due to malfeasance, misfeasance, or nonfeasance, including when the failure results from not acting upon actual knowledge *544 of the risk to others as well as from a lack of ordinary care in discovering and avoiding such risk of harm which has resulted from the breach of the duty.
4. With regard to the personal (as contrasted with technical or vicarious) fault, personal liability cannot be imposed upon the officer, agent, or employee simply because of his general administrative responsibility for performance of some function of the employment. He must have a personal duty towards the injured plaintiff, breach of which specifically has caused the plaintiff's damages. If the defendant's general responsibility has been delegated with due care to some responsible subordinate or subordinates, he is not himself personally at fault and liable for the negligent performance of this responsibility unless he personally knows or personally should know of its non-performance or mal-performance and has nevertheless failed to cure the risk of harm.
In the instant case, LMHI owed a duty to the plaintiffs to refrain from engaging in unfair or deceptive acts or practices in connection with selling them a mobile home. The breach of this duty caused the damage for which recovery is sought. This duty was delegated to Mr. Reid, LMHI's general manager. The trial court found the following fault by Mr. Reid: telling the plaintiffs that it would take a month to manufacture the mobile home; telling the plaintiffs that they had to accept the mobile home because it was just what they had ordered; and refusing to return the deposit when the plaintiffs rejected the mobile home. These facts support a finding that Mr. Reid breached the duty of care through personal fault. Thus, we find no manifest error in the trial court's finding that Mr. Reid is personally liable for the judgment.

DISPOSITION
For the foregoing reasons, we amend the trial court's judgment to increase the attorney fee award from $4,000.00 to $5,000.00 for work done on appeal. We affirm the judgment in all other respects. We assess costs of this appeal to the defendants.
AFFIRMED AS AMENDED.
NOTES
[1] The language relied on by the defendants is quoted as written and is poorly written. For the purpose of defendants' argument only, we interpret the language to stand for the proposition that should the buyer default, he will forfeit as compensatory damages to the seller any down payment made.