902 So.2d 406 (2005)
Arties L. MANNING, Jr. and Quamysha Taylor Manning, Both Individually and on Behalf of Their Minor Daughter, Artiesha Taylor Manning
v.
UNITED MEDICAL CORPORATION OF NEW ORLEANS, Individually and d/b/a United Medical Center, David Lee Golden, M.D., James English, Kevin Barkman, Janine S. Delehunt, Donald R. Dizney and Romona Baudy.
No. 2004-CA-0035.
Court of Appeal of Louisiana, Fourth Circuit.
April 20, 2005.
*408 R. Ray Orrill, Jr., W. Christopher Beary, Peter J. Hamilton, Jr., Orrill, Cordell & Beary, L.L.C., New Orleans, LA, for Plaintiffs/Appellants.
James A. Cobb, Jr., Susan E. Henning, John F. Emmett, Emmett, Cobb, Waits & Kessenich, New Orleans, LA, for Defendants/Appellees, Donald Dizney and James English.
TERRI F. LOVE, Judge.
Plaintiffs, Arties Manning and Quamysha Taylor Manning (collectively referred to as "the Mannings"), appeal the trial court's judgment granting Summary Judgment in favor of defendants, James English and Donald Dizney, and excluding plaintiffs' evidence of medical costs. For the reasons assigned below, we affirm.

FACTS AND PROCEDURAL HISTORY
Dr. David Golden ("Dr. Golden"), was a board certified OB/GYN who graduated from Tulane University Medical School in 1977. On November 10, 1987, Dr. Golden's license to practice was suspended and his privileges were revoked by The United Medical Corporation of New Orleans d/b/a United Medical Center ("UMCNO").[1] In July 1993, Dr. Golden submitted his application requesting reinstatement of staff privileges at UMCNO. Upon receipt of his application for staff privileges, Dr. Henry Evans ("Dr. Evans"), head of the credentials committee, which is comprised exclusively of physicians, informed Dr. Golden that his application was incomplete and requested that Dr. Golden complete the application. Dr. Golden's provisional or temporary privileges were authorized for a consecutive *409 period of thirteen (13) months by UMCNO, prior to July 12, 1994.
On July 12, 1994, Quamysha Taylor Manning ("Mrs. Manning") presented with a term pregnancy to UMCNO's emergency room. Dr. Golden, serving as the on-call Obstetrician/Gynecologist ("OB/GYN"), delivered Artiesha Taylor Manning, who was born in fetal distress suffering perinatal asphyxia, which caused severe and permanent brain injuries.
On May 16, 1995, a medical review panel was convened and found that although the evidence did not support a finding that UMCNO failed to meet the applicable standard of care as charged in the Mannings' complaint, the evidence did support a finding that Dr. Golden failed to comply with the appropriate standard of care, which resulted in the injuries sustained by Artiesha Taylor Manning. The Mannings executed a Receipt and Release Agreement and settled with UMCNO for the sum of one hundred thousand dollars ($100,000), which was the hospital's maximum liability pursuant La.Rev.Stat. 40:1299.42(B)(2). However, UMCNO remained a nominal defendant insofar as the Mannings' prosecution of their claim against the Louisiana Patient's Compensation Fund in excess of the amount already paid by UMCNO.
On June 3, 2000, the Mannings filed suit against UMCNO; Dr. Golden, the treating physician; James English ("Mr. English"), shareholder, President and a Director of UMCNO; Donald Dizney ("Mr. Dizney"), shareholder, Officer and/or Director of UMCNO; Ramona Baudy ("Ms. Baudy"), an Officer and/or Hospital Administrator and employee of UMCNO; Janine Delehunt and Kevin Barkman, employees of UMCNO's parent company in Orlando, Florida; and Richard Roe, John Doe, Adam A., Bob B., and other officers and/or directors and/or administrative officers and/or employees of UMCNO.
The Mannings aver that the defendants were negligent in failing to properly monitor and examine both the plaintiff and her minor child, while in utero, while in labor, during delivery, and following delivery. The Mannings also aver administrative negligence against the officers of UMCNO, asserting that Dr. Golden should not have been credentialed at UMCNO, and that its officers and/or directors and/or employees were grossly negligent and exhibited a wanton and reckless disregard for the health and safety of its patients, thus causing the Mannings to suffer all of the damages alleged in the case sub judice.
Defendants, Mr. English, Mr. Dizney, Mr. Barkman and Ms. Delehunt filed Motions for Summary Judgment seeking dismissal asserting that as officers of UMCNO, they did not owe a personal duty to the Mannings. Defendants also filed a Motion in Limine seeking to exclude evidence of past and future medical costs and/or expenses suffered by the Mannings. Defendants, Messrs. English and Dizney, filed a Partial Motion for Summary Judgment as to their liability as shareholders, asserting that they were entitled to judgment as a matter of law, as Louisiana law imposes no duty owed by shareholders of a corporation to third persons, such that shareholders should be personally liable. The Mannings then filed a Cross Motion for Partial Summary Judgment as to Messrs. English and Dizney's shareholder's liability, asserting that Louisiana law does establish such a duty and that they were entitled to a judgment as a matter of law.
After a hearing on the merits, the trial court granted, with prejudice, Jeanine Delehunt and Kevin Barkman's Motion to Dismiss. The trial court granted Messrs. English and Dizney's Motions for Summary *410 Judgment, dismissing them in their capacity as officers and as shareholders of UMCNO, finding no duty existed as a matter of law. As such, the Mannings' Cross Motion for Partial Summary Judgment was denied. The trial court also granted the Defendants' Motion in Limine, excluding the evidence of medical costs. It is from this judgment that the Mannings appeal.

ASSIGNMENTS OF ERROR
The Mannings allege the trial court erred by: 1) granting Messrs. English and Dizney's Motion for Summary Judgment, finding that Donald Dizney and James English did not owe a duty to the Mannings, and 2) granting Defendant's Motion in Limine, excluding evidence of medical expenses at trial.

Standard of Review
On appeal, this Court reviews summary judgments de novo. Smith v. Our Lady of the Lake Hospital, Inc., 93-2512, p. 26 (La.7/5/94), 639 So.2d 730, 750. Thus, an appellate court determines whether there are any genuine issues of material fact and if the mover is entitled to judgment as a matter of law. LSA-C.C.P. Art. 966; Walker v. Schwegmann Giant Supermarkets, Inc., 95-1934 (La.App. 4 Cir. 3/14/96), 671 So.2d 983, 988.

FIRST ASSIGNMENT OF ERROR
The Mannings allege the trial court erred by granting defendants' Motions for Summary Judgment, dismissing Messrs. English and Dizney and alternatively denying the Mannings' Cross Motion for Summary Judgments, which asserted that defendants, Messrs. English and Dizney, were personally liable for UMCNO's alleged negligence. Based on the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," the Court must determine if Messrs. English and Dizney, as the movants for the Motion for Summary Judgment, established that no duty is owed by shareholder and/or directors to third parties, or alternatively, as movants whether Messrs. English and Dizney established that, as shareholders and directors, there were no genuine issues of material fact and they were entitled to judgment as a matter of law, as they were not personally liable, as shareholders and/or directors, for the alleged negligence of the corporation. LSA-C.C.P. Art. 966(B).
The Mannings assert that Messrs. English and Dizney, as shareholders of UMCNO, can be held personally liable for UMCNO's alleged negligence. Louisiana does not generally recognize a cause of action by third parties against directors, officers, or shareholders of a corporation. Louisiana, by statute, provides in part: "[a] shareholder of a corporation ... shall not be liable personally for any debt or liability of the corporation." LSA-R.S. 12:93(B). Alternatively, the Louisiana Supreme Court held that shareholders may only be personally liable in exceptional circumstances finding that shareholders can become personally liable when the corporation is the "alter ego" of the shareholders. Riggins v. Dixie Shoring Co., Inc., 590 So.2d 1164, 1168 (La.1991).
The Mannings also assert that Messrs. English and Dizney, as directors of UMCNO, can be held personally liable for UMCNO's alleged negligence. In Korson v. Independence Mall I, Ltd., 595 So.2d 1174, 1178 (La.App. 5th Cir.1992), the court noted "the United States Fifth Circuit has reaffirmed that Louisiana law does not provide third parties with a cause of action against directors and officers for negligence, mismanagement, breach of fiduciary duty, or for the debts of the employer."
*411 However, Louisiana recognizes four exceptions where a director can be held personally liable for a corporation's negligence. In Canter v. Koehring Co., 283 So.2d 716 (La.1973). (Legislatively superseded by La. R.S. 23:1032 insofar as it extends to a duty owed to a co-employee), the Louisiana Supreme Court enumerated these four exceptions in finding directors, officers, or employees personally liable for a corporation's negligence. The factors enumerated by the Court are as follows:
1. The principal or employer owes a duty of care to the third person (which in this sense includes a co-employee), breach of which has caused the damage for which recovery is sought.
2. This duty is delegated by the principal or employer to the defendant.
3. The defendant officer, agent, or employee has breached this duty through personal (as contrasted with technical or vicarious) fault. The breach occurs when the defendant has failed to discharge the obligation with the degree of care required by ordinary prudence under the same or similar circumstances  whether such failure be due to malfeasance, misfeasance, or nonfeasance, including when the failure results from not acting upon actual knowledge of the risk to others as well as from a lack of ordinary care in discovering and avoiding such risk of harm which has resulted from the breach of the duty.
4. With regard to the personal (as contrasted with technical or vicarious) fault, personal liability cannot be imposed upon the officer, agent, or employee simply because of his general administrative responsibility for performance of some function of the employment. He must have a personal duty towards the injured plaintiff, breach of which specifically has caused the plaintiff's damages. If the defendant's general responsibility has been delegated with due care to some responsible subordinate or subordinates, he is not himself personally at fault and liable for the negligent performance of this responsibility unless he personally knows or personally should know of its non-performance or mal-performance and has nevertheless failed to cure the risk of harm. (Emphasis added).
Id. at 721.
The Mannings' attempt to impose a personal duty on Messrs. English and Dizney, as directors of UMCNO, is guided by the fourth factor set forth in Canter. The fourth factor in Canter requires that the defendants have a responsibility greater than general administrative responsibility. It requires that the defendants have a personal duty towards the plaintiff. Hoerner v. ANCO Insulations, Inc., 00-2333 (La.App. 4 Cir. 1/23/02), 812 So.2d 45, 64. Additionally, if the defendants delegated, with due care, their general responsibility to an employee, no duty or personal liability exists. Canter, 283 So.2d at 721. The requisite establishment of a personal duty has been continuously upheld in Louisiana jurisprudence. See H.B. Buster Hughes, Inc. v. Bernard, 318 So.2d 9, 12 (La.1975); Carter v. Poindexter, 394 So.2d 807, 810 (La.App. 4th Cir.1981); Donnelly v. Handy, 415 So.2d 478, 481-482 (La.App. 1st Cir.1982); Bush v. Fidelity & Deposit Co. of Maryland, 516 So.2d 1199, 1201 (La.App. 2nd Cir.1987); Laurents v. Louisiana Mobile Homes, Inc., 97-976 (La.App. 3 Cir. 2/5/97), 689 So.2d 536, 543. Thus, a mere administrative duty to the corporation will not suffice to hold an officer, agent, or employee liable if he properly delegated responsibility to an employee. Walker, 671 So.2d at 987.
Accordingly, in its Reasons for Judgment, the trial court stated that Messrs. *412 English and Dizney were dismissed because the "plaintiffs herein have alleged nothing more than a duty of a general administrative nature." After careful review of the record, we find that the Mannings failed to allege any facts or law, which support a finding that Messrs. English and Dizney owed, as shareholders and directors, a duty to the Mannings. The record establishes that Messrs. English and Dizney were officers and shareholders of UMCNO; however, the Mannings failed to show that Messrs. English and Dizney, individually or collectively, possessed personal knowledge about Dr. Golden or his medical work history.
In an attempt to evidence a personal duty owed to the Mannings, the Mannings rely on Ms. Baudy's testimony in which she states that she issued memoranda to Messrs. English and Dizney containing statements regarding Dr. Golden. However, after conducting a de novo review of the record, we find that Ms. Baudy merely included the names of the doctors seeking staff privileges in her correspondence and her testimony further supports the contention made by Messrs. English and Dizney that they were not involved in the credentialing of Dr. Golden. Dr. Evans, the UMC Chief of Staff, stated in his deposition that the credentials committee authorized Dr. Golden's provisional staff privileges. According to UMCNO's medical staff bylaws, the credentials committee is the precise group to which Messrs. English and Dizney properly delegated privilege granting authority. Article III, Section 2 of the medical staff bylaws provides:
a. It is the responsibility of the Credentials Committee to coordinate the determination of appropriate clinical privileges for each practitioner, and to make recommendations through the Executive Committee to the Governing Body.
Messrs. English and Dizney also confirmed that they possessed no personal knowledge about Dr. Golden until the commencement of the lawsuit. After careful review of the entire record, we find there exists no evidence to support a finding that a personal duty was owed by Messrs. English and Dizney. We find, as the trial court did, that
... the evidence adduced establishes that the responsibility for credentialing decisions at United Medical Center was delegated to appropriate parties, i.e., physicians and the administrator through hospital and corporate bylaws.
Accordingly, we find that Messrs. English and Dizney possessed only a general administrative responsibility, which included the proper delegation of authority to the credentialing committee and the Chief Executive Officer of UMC.
Additionally, the Mannings do not allege any facts, which would hold Messrs. English and Dizney personally liable, solely as shareholders. The courts of Louisiana are reluctant to hold a shareholder, officer, or director of a corporation personally liable for corporate obligations, in the absence of fraud, malfeasance, or criminal wrongdoing. La. R.S. 12:93(B) and 12:95; Lone Star Industries, Inc. v. American Chemical, Inc., 461 So.2d 1063 (La.App. 4 Cir.1984). "Our jurisprudence has held that only exceptional circumstances warrant the radical remedy of piercing the corporate veil." Middleton v. Parish of Jefferson, 97-324 (La.App. 5 Cir. 1/14/98), 707 So.2d 454, 456, citing Sparks v. Progressive Am. Ins. Co., 517 So.2d 1036 (La.App. 3rd Cir.1987). When determining whether to apply the alter ego doctrine, courts should consider the following factors, which include but are not limited to: 1) commingling of corporate and shareholder funds; 2) failure to follow statutory formalities for incorporating and transacting *413 corporate affairs; 3) undercapitalization; 4) failure to provide separate bank accounts and bookkeeping records; and 5) failure to hold regular shareholder and director meetings. Riggins, 590 So.2d at 1168. The record does not support a finding that one of the primary components, which justify piercing the corporation's veil, is present. Accordingly, pursuant to LSA-R.S. 12:93(B), as shareholders of UMCNO, Messrs. English and Dizney are not personally liable for the alleged negligence of UMCNO.
Upon de novo review of the record, we find that the Mannings allege nothing more than the fact that Messrs. English and Dizney are directors and shareholders of UMCNO. Accordingly, because the facts only reveal a general administrative duty of Messrs. English and Dizney, for which the law of Louisiana does not allow recovery, the Mannings failed to allege any genuine issues of material fact. Thus, Messrs. English and Dizney are entitled to dismissal as a matter of law. As such, we affirm the trial court.

SECOND ASSIGNMENT OF ERROR
Second, the Mannings allege the trial court erred by granting defendants' Motion in Limine, excluding the evidence of medical expenses at trial. La C.C.P. art. 2083 provides in pertinent part that an appeal may be taken from a final judgment rendered in causes in which appeals are given by law whether rendered after hearing or by default, from an interlocutory judgment which may cause irreparable injury. "A judgment that does not determine the merits but only preliminary matters in the course of the action is an interlocutory judgment." La. C.C.P. art. 1841. The trial court's judgment granting the defendant's Motion in Limine, is an evidentiary ruling which is clearly an interlocutory judgment. Miller v. Upjohn Co., 461 So.2d 676 (La.App. 1st Cir.1984). Accordingly, the appellants may appeal this judgment only if irreparable harm will result. LSA-C.C.P. Art. 2083. The test for determining whether an interlocutory judgment may cause irreparable injury is whether the procedural error will have such an effect on the merits of the case, that the appellate court cannot correct an erroneous decision on the merits. Miller, supra, citing Bernard v. Allstate Ins. Co., 396 So.2d 548.
Accordingly, we do not find that the trial court's judgment granting the defendant's Motion in Limine is an evidentiary ruling, which will cause irreparable harm. Therefore, the trial court's judgment is a nonappealable interlocutory judgment.

CONCLUSION
For the above reasons, we affirm the decisions of the trial court.
AFFIRMED.
NOTES
[1] On November 10, 1987, Dr. Golden was convicted of a felony for Medicaid fraud, was incarcerated and removed from the UMCNO staff. Dr. Golden was released on parole and entered into a consent order with the Louisiana State Board of Medical Examiners on February 21, 1991, which required that Dr. Golden obtain fifty (50) continuing medical education credits per year during 1991, 1992 and 1993, the first three years of his probation.