NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

16-87

STEPHANIE BROOKE LEBLANC

VERSUS

TERRY LYNN COOLEY

**********

APPEAL FROM THE
THIRTY-SIXTH JUDICIAL DISTRICT COURT
PARISH OF BEAUREGARD, NO. C-2011-0955
HONORABLE H. WARD FONTENOT, AD HOC JUDGE

**********

BILLY HOWARD EZELL
JUDGE

**********

Court composed of John D. Saunders, Billy Howard Ezell, and James T. Genovese, Judges.

AFFIRMED.

**Randall Earl Hart**
**Broussard & Hart, LLC**
**1301 Common St.**
**Lake Charles, LA 70601**
**(337) 439-2450**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
  **Stephanie Brooke LeBlanc**
  **Melissa LeBlanc**
  **Kimberly LeBlanc**

**E. Grey Burnes Talley**
**Burnes, Burnes & Talley**
**P. O. Box 650**
**Alexandria, La 71309-0650**
**(318) 442-5231**
**COUNSEL FOR DEFENDANT/APPELLANT:**
  **Terry Lynn Cooley**

**EZELL, Judge.**

Sisters, Melissa, Stephanie, and Kimberly LeBlanc, filed suit against their stepfather, Terry Lynn Cooley, for damages they claimed they sustained as a result of sexual abuse committed upon them by their stepfather. After a trial on the issues of injury and causation, the trial judge concluded that the girls were each entitled to $50,000 in compensatory damages. Terry then filed the present appeal.

## FACTS

The girls' parents, Joey LeBlanc and Donna Cooley, were divorced when the girls were very young. Donna then married Terry. Initially, the girls lived with their father in Lake Charles, but eventually went to live with Donna and Terry in DeRidder. When the girls moved in, Terry began tickling the girls as a form of innocent horse play.

However, around the time Melissa turned ten, Terry began using tickling as an opportunity to touch her breasts. The tickling was almost a daily occurrence. He would also come in her bedroom at night to tickle her. Melissa testified that he would also grab her training bra and snap it. Terry also commented on her breasts. When Terry would tickle Melissa on her knees, he would leave his hand there. Sometimes he would place his hand in the junction between her pelvic area and thigh. One time Terry asked Melissa to do a back bend, using the opportunity to run his finger between her legs.

Melissa testified that she told her mother that she did not like what Terry was doing, and her mother told her she was overreacting. Donna denied that Melissa ever said anything to her.

One day Melissa began crying at school and explained to a friend her situation at home. At this point, it appears that the Office of Community Services

(OCS) got involved and met Donna at school that afternoon. After this, Melissa went to live with her father. The OCS informed Terry that he should stop tickling the girls, which he did for a while.

However, Terry's attentions soon turned toward Stephanie. She was also about ten years old when the tickling became sexual. Stephanie testified that tickling went from playful and innocent to knowingly inappropriate. He would touch her on her breasts and sometimes got close to the vaginal area. This occurred almost daily and sometimes at night. This went on for about five years.

At one point, Terry tried to get Stephanie to watch an inappropriate movie with him which started with a topless cheerleader. She left the room, but he followed her and told her there was nothing wrong with the movie. One time Terry even talked to Stephanie about sex and told her it was ok to have sex but only if she told him about it. Terry even told her she could stick small shampoo bottles in her vagina. It was not until years later that Stephanie realized he was talking about masturbation. He also told her that he could see her in the bathroom through a crack in the door. Stephanie testified that she caught him taking pictures of her under the bathroom door. She eventually started dressing in the shower. Stephanie's sister, Kimberly, saw a picture Terry took of Stephanie's legs.

Another time Stephanie wanted to go roller skating. Terry told her that she would have to bend over and let him spank her first. When she complied, he stuck his finger in her buttocks. He then took her skating and watched her skate. Another incident occurred when Stephanie rode on the wheel fender of the tractor Terry was driving when they went to feed hay to the animals. He would reach back and touch her thigh. He got mad at her because she kept pushing his hand away. After this, he would not let her go spend the night at a friend's house.

2

Stephanie testified that Terry would usually walk around in his underwear. Donna agreed that Terry wore his underwear around the house. Sometimes his jeans would be unbuttoned and unzipped. One time he urinated in the backyard in front of Stephanie. The final straw for Stephanie came the night she was cleaning the kitchen. When she turned around, Terry had pulled his penis out of his pants. He walked up behind her, slapped her on the behind, and told her not to say anything. She went to the bathroom, and he followed her and did it again.

The next day at school, Stephanie told her friend about the incident. The friend told her mother what Stephanie told her. The friend's mother then went to Donna's office. Donna denied it happened, so the friend's mother told school officials who involved OCS again. Stephanie then stayed with her friend and family for a week before going to live with her dad.

Kimberly testified that Terry interacted more with Stephanie than her. She saw Terry touching Stephanie's breasts but did not know it was inappropriate. Once Stephanie left, Terry began inappropriately touching Kimberly's breasts, which went on for about a year.

After Stephanie went to live with Joey, he hired an attorney to get custody of Kimberly. Eventually, the Cooleys gave in and let Kimberly go live with her father. After Kimberly left the home, Terry made a vow to Donna that he was not going to tickle anymore. Eventually, Terry told Donna that he tickled some neighborhood kids. A month later, Terry was arrested.

Criminal charges were brought against Terry, and a jury convicted him of: (1) aggravated incest for lewdly fondling his juvenile stepdaughter, Melissa; (2) aggravated incest for exposing his genitals and lewdly fondling his minor stepdaughter, Stephanie; (3) aggravated incest for lewdly fondling his juvenile

3

stepdaughter, Kimberly; and (4) sexual battery for touching the genitals of the adolescent neighbor without her consent. The trial court sentenced Terry to five years at hard labor for each aggravated incest conviction, to run concurrently; two years at hard labor for the sexual battery; and seven years at hard labor for the molestation, to run concurrently with each other, but consecutively to the aggravated incest sentences. This court affirmed Terry's convictions and sentences. *State v. Cooley*, 11-959 (La.App. 3 Cir. 4/4/12), 87 So.3d 285, *writ denied*, 12-1008 (La. 10/26/12), 99 So.3d 640.

In 2011, Stephanie filed a petition for damages against Terry as a result of the sexual abuse. She acknowledged that her damages were not sufficient to warrant a jury trial. Her sisters, Melissa and Kimberly, joined her in the suit in 2013. In 2014, the girls filed a motion for summary judgment on the issue of liability. The trial court granted summary judgment as to duty and breach but held that the girls would still have to prove injury, causation, and damages at trial.

Trial on these issues was held November 24-26, 2014. After hearing the testimony and reviewing the evidence, the trial court in written reasons found that the girls had established that Terry's sexual abuse in the form of unwanted touching and verbal aggression caused them damages in the form of mental anguish, humiliation, and embarrassment. The trial court also found that the girls had residual emotional and psychological injury. The court concluded that the value of each girl's claim exceeded the jurisdictional amount of $50,000, so it awarded each girl $50,000. La.Code Civ.P. art. 1732(1)(a). With this award, the trial court did not address punitive damages allowable under La.Civ.Code art. 2315.7, finding that issue to be moot. Terry then filed the present appeal, asserting several assignments of error.

## MELISSA'S TESTIMONY

Terry's first two assignments of error relate to Melissa's testimony. Terry argues that Melissa's testimony was impeached, and, due to the conflict in her testimony, her claims should be denied. Terry specifically claims that the trial court erred in finding that he engaged in several acts of playfully touching and squeezing her breasts when she later denied the conduct. He also claims that the trial court erred in finding that he engaged in several acts of touching inside her clothes and between her buttocks when she had not testified about this in her deposition.

> It is well settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong," and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable.

*Rosell v. Esco*, 549 So.2d 840, 844 (La.1989).

Terry specifically takes issue with the trial court's finding that he performed "tittie twisters" on Melissa; an act the trial court described as "a painful and offensive gesture which needs no elaboration." At trial, Melissa explained that Terry would grab her breasts from the underside while saying "honk, honk" and laughing. He referred to this action as a "tittie twister." Melissa agreed he did not actually grab and twist her nipples, as the term contemplates. However, he did grab her breasts. It was the name Terry gave to this touching. Kimberly also testified that Terry would refer to a "tittie twister" when he would place his open hands on her breasts and twist the entire breast. All the girls testified that the tickling was aggressive and painful.

5

When presented with her deposition testimony, Melissa agreed that she did not mention that Terry had stuck his finger between her buttocks at that time. However, she explained that she was actively trying not to remember the things Terry did, and upon reflection, she later remembered this incident.

The trial court heard all of Melissa's testimony and had the benefit of her deposition testimony. We find that any inconsistencies in Melissa's testimony did not rise to the level of manifest error warranting a reversal of the trial court's findings.

## MENTAL ANGUISH

In his third assignment of error, Terry argues that it was error for the trial court to find that the girls suffered mental anguish due to Terry's sexual abuse, arguing that mental anguish damages are allowable only under La.Civ.Code art. 2315.6. Article 2315.6 provides for mental anguish damages when viewing an event causing injury to another or coming upon the scene soon thereafter. Terry's argument is flawed because Louisiana law allows mental anguish damages in many other circumstances and not just pursuant to La.Civ.Code art. 2315.6.

Pursuant to La.Civ.Code art. 2315, a tort-feasor must compensate the tort victim for all the damages caused by his actions. *McGee v. A C and S, Inc.*, 05-1036 (La. 7/10/06), 933 So.2d 770. Furthermore, Article 2315 authorizes compensatory damages, which are damages designed to place the tort victim in the position she would have been in had the tort not been committed. *Id*. Compensatory damages include special and general damages. *Id*. General damages are "'those which may not be fixed with any degree of pecuniary exactitude but which, instead, involve **mental or physical pain or suffering**, inconvenience, the loss of gratification of intellectual or physical enjoyment, or

6

other losses of life or life-style which cannot really be measured definitely in terms of money.'" *Id*. at 774 (quoting *Duncan v. Kansas City S. R.R.*, 00-66, p. 13 (La. 10/30/00), 773 So.2d 670, 682)(emphasis added). "Courts commonly list different elements of general damages, including mental anguish and physical pain and suffering, both past and future, separately." *Id*. at 774-75; *Travis v. Spitale's Bar, Inc.*, 12-1366 (La.App. 1 Cir. 8/14/13), 122 So.3d 1118, *writs denied*, 13-2409, 13-2447 (La. 1/10/14), 130 So.3d 327, 329.

The girls were entitled to compensation for the mental anguish they experienced due to Terry's sexual abuse as an element of general damages. This assignment of error has no merit.

## EMOTIONAL AND PSYCHOLOGICAL INJURY

In his next three assignments of error, Terry argues that it was error for the trial court to award the girls damages for emotional and psychological injury without expert testimony. Terry also argues that girls are unwilling to admit they are responsible themselves for their emotional and psychological state. He further argues that blaming him for their emotional issues is not enough to establish that his actions caused their problems.

Expert testimony to support recovery for emotional and psychological injury is not necessary. *Dowden v. Mid State Sand & Gravel Co., Inc.*, 95-231 (La.App. 3 Cir. 11/2/95), 664 So.2d 643, *writ denied*, 95-2864 (La. 2/2/96), 666 So.2d 1099; *Laurents v. Louisiana Mobile Homes, Inc.*, 96-976 (La. 2/5/97), 689 So.2d 536. The plaintiffs' testimony alone is sufficient. *Id*. This court in *Dowden*, citing *Kolder v. State Farm Ins. Co.*, 520 So.2d 960 (La.App. 3 Cir. 1987), recognized that sometimes more than just the plaintiff's self-serving testimony is required to establish mental anguish damages. This court recognized that other lay testimony

and the circumstances surrounding the case may be sufficient evidence to support a plaintiff's claim for mental anguish damages.

In addition to their own testimony concerning the emotional turmoil they faced for years, the girls' father, paternal grandmother, Melissa's husband, and Stephanie's boyfriend, all testified regarding the issues the girls dealt with over the years as a result of Terry's sexual abuse.

Testimony revealed that Terry began sexually touching and verbally abusing Melissa when she was around ten years old. When Melissa finally left after a year of the sexual abuse, his attentions turned to Stephanie, who was also approximately ten years old. His abuse of Stephanie continued for approximately five years before she left the home. Finally Terry's attentions turned to Kimberly, who was about twelve or thirteen years old at the time. Terry took advantage of the young ages of the girls and his position as their stepfather for his own sexual desires and gratification.

At trial, Terry tried to suggest that the divorce of the girls' parents, their unstable relationships, and their use of drugs are what caused their problems. However, we agree with the trial court that the girls' use of drugs and unstable relationships began after Terry started sexually abusing the girls. Up until that time, the girls had fairly normal lives and relationships with friends.

We find no error in the trial court's reliance upon the testimony of the girls and other witnesses in finding that Terry's conduct caused emotional and psychological injury to the girls.

Terry's final assignment of error concerns the amount of damages awarded to each girl. Terry claims that the amount of $50,000 awarded to each of the girls was excessive.

The trial court's award of damages included (1) mental anguish, humiliation, embarrassment, etc., resulting from violations of unwanted touching and verbal aggression, and (2) residual emotional and psychological injury. Punitive damages pursuant to La.Civ.Code art. 2315.7 were not even considered because the trial court's award of $50,000 in general damages was subject to the stipulated jurisdictional limitations under La.Code. Civ.P. art. 1732(1)(a). Louisiana Code of Civil Procedure Article 1732(1)(a) provides that a defendant is not entitled to a trial by jury when the petitioner stipulates that the cause of action does not exceed $50,000.

This court in *Dauzat v. Dolgencorp, LLC*, 15-1096, pp. ___ (La.App. 3 Cir. 4/6/16), ___ So.3d ___, ___ (alteration in original), recently reviewed an appellate court's function in reviewing general damage awards as follows:

> "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." La.Civ.Code art. 2315(A). When assessing general damages, "much discretion must be left to the judge[.]" La.Civ.Code art. 2324.1. The role of an appellate court when reviewing general damage awards is to review the trial court's exercise of discretion, it is not the role of an appellate court to decide what it considers to be an appropriate award. *Youn v. Mar. Overseas Corp.*, 623 So.2d 1257 (La.1993), *cert. denied*, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994); *Melder*, 154 So.3d 781.
>
> > Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.

*Youn*, 623 So.2d at 1261. *See also Jeansonne v. City of Marksville*, 15–298 (La.App. 3 Cir. 11/25/15), 180 So.3d 608. Since the trial court is in the best position to evaluate witness credibility and see the evidence firsthand, it is afforded much discretion in independently assessing the facts and rendering an award. *Miller v. LAMMICO*, 07–1352 (La.1/16/08), 973 So.2d 693; *McCarthy v. Entergy Gulf States*, Inc., 11–600 (La.App. 3 Cir. 12/7/11), 82 So.3d 336, *writ denied*, 12–72 (La.3/9/12), 84 So.3d 553.

Testimony in the present case revealed that the girls have trust and anger issues. They are not very outgoing. As a result of the criminal and civil proceedings, the girls no longer have a relationship with their mother and her family. Their personal relationships with friends and other family members have been affected.

The girls' paternal grandmother, Gayle Leblanc, testified that both Melissa and Stephanie are withdrawn and do not trust anybody. They don't like to be hugged. It was her opinion that, although Stephanie is tough, she drinks to handle the pain. Melissa has panic attacks. She explained that none of the girls have a good opinion of themselves. She stated that all three girls used to be affectionate and now they are not.

Joey testified that all three of his daughters are untrusting, have anger issues, are withdrawn, and don't like being touched. He stated that they tended to befriend troubled individuals. Joey noticed that the girls' behavior changed before they came to live with him. He has also noticed that the girls have been affected by their mother's actions since she sides with their abuser.

Zach Wise has been married to Melissa since 2013. He testified that she is not very quick to trust other people and doesn't speak if not comfortable with someone. One time he tried to catch her as she was falling off the bed, which scared her just because he touched her. It was at this point that Melissa told Zach

about Terry's sexual abuse. Zach also recounted a recent event at K-Mart when they were shopping. The two got separated, and Melissa broke down in a panic and crying.

Devon Morvant, who has known Stephanie for about five years and has a child with her, testified that she does not trust anyone and barely trusts her own family. He testified that it was the birth of their son that actually allowed the couple to start bonding.

Kimberly does not like having her breasts touched or viewed. She is also bothered by men with bushy mustaches because Terry has one. Kimberly testified that her mother called her after the court proceedings started and told her that she did not want the girls to get Terry in trouble. Her mother was afraid she would lose the things she loved. Kimberly was upset that her mother would care more about objects than her daughters. Kimberly has not spoken to her mother since this incident. She was once very close to her mom. This separation has caused her much pain.

In *Doe v. Roman Catholic Church for the Archdiocese of New Orleans*, 615 So.2d 410 (La.App. 4 Cir.), *writs denied*, 618 So.2d 412, 413 (La.1993), the fourth circuit affirmed a jury award of $150,000 in general damages and $20,000 in special damages to a fourteen-year-old girl who was by molested by a church youth organization volunteer. The facts of the case were documented in a previous appeal in *Doe v. Roman Catholic Church for the Archdiocese of New* Orleans, 602 So.2d 129 (La.App. 4 Cir. 1992). The volunteer tutored the victim on four occasions. During the first three tutoring sessions, the volunteer tried to hug and kiss the victim when they were walking to his car and when he was driving her home. During a fourth tutoring session, the volunteer kissed the victim, pushed her

11

to the floor, raised up her blouse, and began licking and kissing her breasts. When taking her home after that session, the volunteer placed the victim's hand between his legs and asked her if she wanted to touch him there. She withdrew her hand and said no. Once the victim's parents learned of the molestation, the parents began to blame her for the molestation and the girl became a prisoner in her own home. She eventually ran away from home and went to live with a boyfriend and his mother. She later dropped out of school.

Based on the evidence, we cannot say that the trial court abused its discretion in awarding the girls $50,000 each in damages. Melissa and Kimberly suffered sexual abuse at the hands of Terry for at least a year. Stephanie suffered sexual abuse for five years. Not only has Terry's sexual abuse of the girls affected their relationship with their mother, it continues to affect the relationships they have formed since the sexual abuse occurred. The girls continue to suffer mentally and psychologically due to the sexual abuse they suffered by an adult who took advantage of their young age and his position as their stepfather.

For the reasons expressed in this opinion, we affirm the judgment of the trial court. All costs of this appeal are assessed to Terry Cooley.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION. Uniform Rules—Courts of Appeal. Rule 2–16.3.